Kelly Drew Rooksby, ISB No. 9985
krooksby@grsm.com
Jacquelyn Pill, ISB No.12855
jpill@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
421 W. Riverside Avenue, Suite 1555
Spokane, WA 99201
Tel: 509-252-5608
*Attorneys for Defendant Idaho Brewers*
*United Corp.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| United States of America ex rel. **The Tarbell Group, LLC,** | Civil Action No. 3:25-cv-00145-DCN |
| *Plaintiff(s)* | **DEFENDANT IDAHO BREWERS UNITED CORP.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)** |
| v. | |
| **Appaloosa Horse Club, et al.** | |
| *Defendant(s)* | |

## I.  INTRODUCTION

This *qui tam* action should never have been filed against Idaho Brewers United Corp. ("IBU"). The Complaint's own allegations establish, as a matter of law, that IBU was eligible for every PPP loan at issue. It is difficult to imagine a clearer instance of a False Claims Act complaint defeating itself on its face.

The math is simple. The Complaint concedes that tax-exempt 501(c)(6) organizations became statutorily eligible for PPP loans on December 27, 2020. (Compl. ¶ 32, Dkt. 1.) The Complaint concedes that IBU is a 501(c)(6) organization. (Compl. ¶ 13.) And the Complaint concedes that IBU's PPP loans were approved on January 20, 2021, and March 20, 2021—both dates comfortably inside the eligibility window. (Compl. ¶ 37 & attached table.) Under Relator's own pleading, IBU was eligible every time the SBA approved a loan to it. A certification of

-1-

eligibility cannot be "false" when it is accurate under the very statute Relator invokes, and this Court need not credit a legal conclusion of "ineligibility" that is contradicted by the Complaint's own facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

That defect alone is dispositive. But the Complaint's problems compound. Relator pleads no facts about when IBU applied, who submitted any application, what IBU certified, or what IBU communicated to the SBA. Relator identifies no individual who allegedly acted with fraudulent intent and alleges no state of mind specific to IBU. Instead, Relator lumps twenty unrelated non-profits—spanning five different tax categories, with different eligibility dates and different loan amounts—into common "each defendant" paragraphs that merely recite the statutory elements. That is textbook group pleading, and the Ninth Circuit has long held it insufficient under Rule 9(b). *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182–83 (9th Cir. 2016); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir. 2010).

Relator's first backstop theory fares no better. The Complaint invokes a "fruit of the poisonous tree" label to argue that a second-draw PPP loan is automatically tainted if the first-draw loan was improperly obtained. (Compl. ¶¶ 36, 45.) But no derivative-falsity doctrine bypasses the FCA's per-claim requirements: each claim must independently satisfy the statute's falsity, scienter, and materiality elements. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 191–92 (2016). And the theory collapses on its own terms as to IBU: IBU's first-draw loan was itself approved after the December 27, 2020 eligibility date. There is no poisoned tree.

Relator's second backstop theory—a reverse false claim under 31 U.S.C. § 3729(a)(1)(G) (Compl. ¶¶ 42, 48)—fares no better. The Complaint pleads the reverse false claim by recycling the same eligibility-certification conduct underlying the presentment and false-statement theories. Controlling and persuasive authority is overwhelming that a reverse false claim cannot rest on the same conduct as the affirmative claims, and this District has applied that rule in the SBA-loan context. *See, e.g., United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 116 (2d Cir. 2021); *United States ex rel. Houpt v. Wells Fargo Bank, N.A.*, 2019 WL 591441 (D. Idaho 2019).

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

In sum, Relator asks this Court to impose False Claims Act liability—with its treble damages and per-claim civil penalties—on a small Idaho non-profit organization that (i) the Complaint itself concedes was eligible for the loans at issue, (ii) is not alleged to have said, done, or certified anything in particular, and (iii) cannot plausibly have acted "knowingly" when the only certification at issue was, in fact, true. These defects are substantive, not technical, and cannot be cured by amendment. The Complaint should be dismissed against IBU with prejudice.

## II.  STATEMENT OF FACTS

Relator brings this *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729–3733, seeking to recover funds allegedly obtained by defendants under the Paycheck Protection Program. (Compl. ¶ 1, Dkt. 1.) The Complaint alleges that the PPP was enacted pursuant to the Coronavirus Aid, Relief, and Economic Security Act and subsequent legislation to provide economic relief during the COVID-19 pandemic through loans guaranteed by, and subject to forgiveness by, the Small Business Administration ("SBA"). (Compl. ¶ 26.) As relevant here, the Complaint alleges that the PPP excluded tax-exempt 501(c)(6) organizations from eligibility "until December 27, 2020." (Compl. ¶ 32 (emphasis added).)

As to IBU, the Complaint alleges that IBU is a 501(c)(6) organization. (Compl. ¶ 13.) The Complaint further alleges that IBU received approval for a first-draw PPP loan on January 20, 2021, and approval for a second-draw PPP loan on March 20, 2021, in the amounts shown in the table appended to the Complaint. (Compl. ¶ 37 & attached table.) Both approval dates post-date December 27, 2020.

The Complaint does not allege when IBU applied for either PPP loan, who submitted any application on IBU's behalf, the content of any certification made by IBU, or any communication between IBU and the SBA. Instead, the Complaint alleges in undifferentiated terms that "[e]ach defendant" knowingly presented false claims, knowingly made false statements, and knowingly avoided obligations to the United States by falsely certifying PPP eligibility. (Compl. ¶¶ 39–42.) The Complaint identifies no act, statement, or state of mind specific to IBU.

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

The Complaint also alleges that the SBA forgave each of IBU's PPP loans: the first-draw loan was forgiven on October 15, 2021, and the second-draw loan was forgiven on November 15, 2021. (Compl. ¶ 37 & attached table.)

The Complaint asserts two causes of action against IBU. The First Cause of Action (Compl. ¶¶ 38–42) alleges three separate theories of FCA liability as to each of IBU's loans: (i) presentment of a false claim under 31 U.S.C. § 3729(a)(1)(A) (Compl. ¶ 40); (ii) use of a false record or statement material to a false claim under 31 U.S.C. § 3729(a)(1)(B) (Compl. ¶ 41); and (iii) a "reverse false claim" under 31 U.S.C. § 3729(a)(1)(G), premised on the allegation that IBU knowingly concealed or avoided an obligation to pay money to the United States (Compl. ¶ 42). The Second Cause of Action (Compl. ¶¶ 43–48) reasserts the same three statutory theories against the subset of defendants—including IBU—who received second-draw PPP loans, on the additional "fruit of the poisonous tree" theory that any second-draw loan is unlawful because receipt of a first-draw loan was a prerequisite to obtaining a second-draw loan. (Compl. ¶¶ 36, 44(f), 45–48.)

## III.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts well-pleaded factual allegations as true but disregards "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The plausibility standard requires more than "labels and conclusions" and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, the Court's review is generally limited to the allegations in the Complaint and materials included with or incorporated by reference into it. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

Because FCA claims sound in fraud, they must also satisfy Federal Rule of Civil Procedure 9(b), which requires a relator to plead the "who, what, when, where, and how" of the alleged

-4-

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

misconduct. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Rule 9(b) is not a technicality: its particularity requirement applies to each element of each defendant's alleged fraud. When a complaint names multiple defendants, Rule 9(b) requires the relator to plead fraud as to each defendant separately; undifferentiated allegations that lump all defendants together do not suffice. *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182–83 (9th Cir. 2016).

To state a claim under the FCA, a relator must plausibly allege "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (citation omitted). Each element must be pleaded with the particularity required by Rule 9(b). *Ebeid*, 616 F.3d at 998.

## IV.  ARGUMENT

The Complaint asserts two causes of action against IBU. The First Cause of Action challenges both of IBU's PPP loans under three FCA theories: presentment (§ 3729(a)(1)(A)), false statement (§ 3729(a)(1)(B)), and reverse false claim (§ 3729(a)(1)(G)). The Second Cause of Action recycles those same three theories as to the second-draw loan—adding no new allegations about IBU's conduct—and layers on a "fruit of the poisonous tree" theory. Both causes fail. Part A addresses the First Cause, theory by theory. Part B addresses the Second Cause, which fails for the same reasons as the First plus the additional defects of the fruit-of-the-poisonous-tree overlay. Part C shows that both Causes independently fail Rule 9(b). Part D explains why dismissal should be with prejudice.

### A.  The First Cause of Action Fails as a Matter of Law.

The First Cause of Action advances three statutory theories against IBU as to both PPP loans—presentment (§ 3729(a)(1)(A)), false statement (§ 3729(a)(1)(B)), and reverse false claim (§ 3729(a)(1)(G)). Each fails.

1.   The Presentment and False-Statement Theories (¶¶ 40–41) Fail Because the Complaint's Own Allegations Establish IBU's PPP Eligibility and Defeat Falsity.

The cornerstone of Relator's FCA theory against IBU is the allegation that IBU received PPP loans for which it was "legally ineligible." (Compl. ¶ 35.) The Complaint's own allegations refute that premise.

Paragraph 32 of the Complaint expressly alleges that the PPP "excluded Tax-Exempt 501(c)(6) Organizations from eligibility *until December 27, 2020*." (Compl. ¶ 32 (emphasis added).) That is a pleaded concession that, as of December 27, 2020, 501(c)(6) organizations were eligible for PPP loans. The Complaint further alleges that IBU is a 501(c)(6) organization (Compl. ¶ 13), and it identifies two loans attributable to IBU—both approved *after* December 27, 2020:

- First-draw loan, approved January 20, 2021 (Compl. ¶ 37 & attached table); and

- Second-draw loan, approved March 20, 2021 (*id.*).

Accepting the Complaint's allegations as true, IBU was statutorily eligible for PPP funding on each date the SBA approved a loan to IBU. A relator cannot plausibly plead falsity where the complaint's own factual allegations establish the truth of the certification at issue. *See Iqbal*, 556 U.S. at 678–79 (courts disregard conclusory allegations contradicted by the complaint's factual content). The Ninth Circuit has long explained that false certification cases target situations in which "parties avail themselves of benefits of some type, such as loan guarantees or agricultural supports, through false statements which create eligibility that otherwise would not exist." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). Here, no false statement "created" eligibility, because eligibility was real.

The Complaint attempts to paper over this timing problem with the conclusory assertion that "[d]efendants each applied for and received PPP Loans for which they were legally ineligible." (Compl. ¶ 35.) But the legal-ineligibility conclusion is entitled to no weight on a Rule 12(b)(6) motion because it is contradicted by the Complaint's own factual allegations about IBU. *See Iqbal*, 556 U.S. at 678. Critically, the Complaint does *not* allege that IBU applied for any PPP loan before December 27, 2020; that IBU made any certification at a time when it was ineligible; or any other

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

fact supporting an inference of falsity specific to IBU. Absent such allegations, Relator has failed to plead the first and most basic element of an FCA claim.

The absence of falsity is therefore dispositive as to the presentment and false-statement theories in the First Cause of Action (¶¶ 40–41). As discussed in Section IV.B, the same defect defeats the Second Cause's parallel theories (¶¶ 46–47).

2.  The Reverse False Claim Theory (¶ 42) Fails for Two Independent Reasons.

Paragraph 42 of the First Cause of Action pleads a reverse false claim theory under 31 U.S.C. § 3729(a)(1)(G), alleging that IBU knowingly "conceal[ed]" or "improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or property to the United States government" in connection with its PPP loans. The theory fails for two independent reasons. The same analysis applies to paragraph 48 of the Second Cause, as explained in Section IV.B.

*a.  The reverse false claim theory impermissibly recycles the same conduct as the presentment and false-statement theories.*

The Complaint's reverse false claim theory rests on precisely the same alleged conduct as its presentment and false-statement theories. Paragraphs 40, 41, and 42 each allege—in overlapping, near-identical terms—that IBU "knowingly" violated the FCA by "falsely certifying that it... was eligible for a PPP Loan and forgiveness thereof and thereby receiving the same." The Complaint pleads no separate conduct, no distinct moment in time, and no separately alleged false statement as the basis for the reverse false claim theory. Relator simply relabels the same alleged certification as three overlapping statutory violations.

Controlling and persuasive authority is overwhelming that this kind of stacking is not permitted. The Second Circuit stated the rule directly in *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 116 (2d Cir. 2021): "a reverse false claim cannot turn on the same conduct underlying a traditional false claim." The court explained that holding otherwise would mean "any time a defendant violated sub-sections (a)(1)(A) or (B) and received payment, the defendant would also necessarily violate sub-section (G) if it failed to repay to the Government the fraudulently-obtained

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

payments"—an interpretation that would reduce § 3729(a)(1)(G) to a duplicative add-on in every FCA case. *Id.*

The Ninth Circuit's own framing points the same way. In *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011), the court held that the reverse false claims provision "does not eliminate or supplant the FCA's false claim requirement; it rather expands the meaning of a false claim to include statements to avoid paying a debt." And in *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325 (9th Cir. 2017), the court confirmed that a reverse false claim theory premised on the same conduct as a failed affirmative claim must likewise fail.

District courts in the Ninth Circuit and elsewhere have applied this rule to dismiss reverse false claims that recycle the conduct underlying the affirmative claims. *See, e.g.*, *Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F.Supp.3d 1096, 1123 (D. Haw. 2021) (holding that "an actionable reverse false claim cannot be based on a defendant's failure to refund the same payment that was obtained by an actionable false claim"); *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 651 F.Supp.3d 95, 179 (D.D.C. 2023) (collecting authority and holding that "the Government's ability to pursue reimbursement for overpayments or fraudulently induced payments does not constitute an 'obligation'"); *United States ex rel. Kyer v. Thomas Health Sys., Inc.*, 756 F.Supp.3d 75 (S.D. W. Va. 2024) ("The FCA does not contain a two-for-one deal. Without more, the reverse false claims would be redundant to the preceding false claims.").

Most significantly, this District has applied the rule in the SBA-loan context. In *United States ex rel. Houpt v. Wells Fargo Bank, N.A.*, 2019 WL 591441 (D. Idaho 2019), the court dismissed a reverse false claim arising from an SBA loan program for failure to identify an obligation independent of the underlying fraud, relying on *Cafasso* for the proposition that "'reverse' FCA liability stems from a fraud perpetuated to avoid a debt to the government, rather than to obtain payment from the government."

The same result should follow here. Paragraph 42 identifies no obligation that predates or exists independently of the alleged eligibility fraud—only the supposed duty to repay funds

-8-

obtained through that same fraud. The theory is squarely barred by *AECOM*, *Cafasso*, *Kelly*, *Torricer*, *Morsell*, *Kyer*, and *Houpt*.

### b. *No independent, established obligation exists to support a § 3729(a)(1)(G) theory.*

The reverse false claim provision imposes liability only where the defendant has a pre-existing "established duty" to pay or transmit money to the government that the defendant knowingly conceals or improperly avoids. 31 U.S.C. § 3729(a)(1)(G); *id.* § 3729(b)(3) (defining "obligation" as an "established duty"). The Ninth Circuit recently confirmed in *United States ex rel. Lesnik v. ISM Vuzem d.o.o.*, 112 F.4th 816, 830 (9th Cir. 2024), that the FCA "requires that a legal obligation to pay the government be 'established' at the time the false statement or record is made," and that "the obligation cannot be merely a potential liability."

The Complaint identifies no such established duty. To the extent Relator posits that IBU owed a duty to repay funds obtained by fraud, that is a contingent liability dependent on governmental detection and enforcement action—and courts have uniformly held that contingent obligations of that kind are not "established duties" under § 3729(b)(3). *See Lesnik*, 112 F.4th at 830; *United States ex rel. Landis v. Tailwind Sports Corp.*, 160 F.Supp.3d 253, 269 (D.D.C. 2016) ("Contingent obligations—those that will arise only after the exercise of discretion by government actors—are not contemplated by the statute."). And to the extent Relator posits that IBU's PPP loan created a repayment obligation that was live when the alleged false certifications were made, Section IV.A.1 disposes of the premise: IBU was statutorily eligible when each loan was approved, and the SBA discharged the loans as cancelled indebtedness in October and November 2021 in the ordinary course. *See* 15 U.S.C. § 636m(c)(1) ("Amounts which have been forgiven under this section shall be considered canceled indebtedness."). There was no established duty for IBU to conceal or avoid.

For these reasons, paragraph 42 should be dismissed.

## B.  The Second Cause of Action Fails for the Reasons Set Forth in Section IV.A, and the "Fruit of the Poisonous Tree" Overlay Fails Independently.

The Second Cause of Action pleads no conduct by IBU that is distinct from the First Cause. Paragraphs 46, 47, and 48 reassert the same presentment, false-statement, and reverse false claim theories—word-for-word—as to IBU's second-draw loan. No new facts about IBU's conduct are alleged. The Second Cause's recycled theories therefore fail for the reasons set forth in Section IV.A: the presentment and false-statement theories in ¶¶ 46–47 fail for the reasons stated in Section IV.A.1 (IBU was statutorily eligible when the second-draw loan was approved on March 20, 2021, so the certification was not false), and the reverse false claim theory in ¶ 48 fails for the reasons stated in Section IV.A.2 (the theory recycles the same conduct and identifies no independent, established obligation).

The only substantively new content in the Second Cause is its "fruit of the poisonous tree" theory (Compl. ¶¶ 36, 45), which argues that any second-draw PPP loan received by a defendant is automatically unlawful if the predicate first-draw loan was allegedly improper. That theory fails for two independent reasons.

*First*, a derivative-falsity theory cannot bypass the FCA's per-claim element requirements. Although courts have recognized limited doctrines—such as promissory fraud and fraudulent inducement—under which a fraudulently procured government contract or benefit can render subsequent claims false without an independent false statement, those doctrines do not suspend the FCA's requirement that each claim independently satisfy the elements of falsity, scienter, and materiality. *See In re Plavix Mktg., Sales Practice & Prods. Liab. Litig. (No. II)*, 332 F.Supp.3d 927, 942 (D.N.J. 2017) ("falsity and materiality are distinct requirements"); *United States ex rel. Simpson v. Bayer Corp.*, 376 F.Supp.3d 392, 409 (D.N.J. 2019) (claims of legal falsity "must also meet the Act's materiality standard"); *see also Escobar*, 579 U.S. at 191–92; *Cafasso*, 637 F.3d at 1055–56 (FCA liability requires statements connected to the specific claim at issue).

The Complaint's undifferentiated "FPT" theory fails each remaining prong as to IBU's second-draw loan. The Complaint pleads no scienter specific to IBU's second-draw application; no facts showing that any alleged first-draw defect was material to the SBA's separate approval of the second-draw loan; and—as Section IV.A.1 establishes—no underlying falsity in the first-draw

to begin with. The "fruit of the poisonous tree" label is not a substitute for pleading what the FCA requires.

*Second*, even if a derivative-falsity doctrine could apply in the PPP second-draw context, it would not reach IBU. The Complaint alleges that IBU's first-draw loan was approved on January 20, 2021, and that 501(c)(6) organizations became eligible on December 27, 2020. (Compl. ¶¶ 32, 37 & attached table.) IBU's first-draw loan was therefore approved during the period of statutory eligibility. On the Complaint's own facts, there is no "poisonous tree." Relator's derivative-liability theory—whatever doctrinal form it might take—cannot attach to a second-draw loan whose predicate was itself undisputedly lawful on the face of the pleading.

## C.  Both Causes of Action Independently Fail Rule 9(b) Because the Complaint Pleads No IBU-Specific Conduct, Scienter, or Materiality.

Even setting aside the substantive defects in Sections IV.A and IV.B, both Causes of Action independently fail Rule 9(b) as to each of their three statutory theories.

### 1.  The Complaint pleads no IBU-specific presentment or false statement.

The Complaint alleges no facts about when IBU applied for either PPP loan, who submitted any application on IBU's behalf, the content of any certification IBU made, or any communication between IBU and the SBA. Rule 9(b) demands "the who, what, when, where, and how" of the alleged fraud. *Ebeid*, 616 F.3d at 998. Attaching a table listing approval dates and loan amounts does not supply those facts. Government payment, without factual allegations describing a false statement by the defendant that caused the payment, does not plead presentment of a false claim. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055–56 (9th Cir. 2011).

### 2.  Scienter is not pleaded—and, given IBU's undisputed eligibility, cannot be.

The FCA reaches only defendants who act with actual knowledge of, deliberate ignorance as to, or reckless disregard for the falsity of a claim. 31 U.S.C. § 3729(b)(1). The Complaint recites that "[e]ach defendant" knowingly presented false claims (Compl. ¶¶ 40–42, 46–48), but pleads

-11-

no facts at all about IBU's state of mind: no communications, no internal documents, no identification of the individuals who allegedly acted on IBU's behalf. Such formulaic recitation of the scienter element fails Rule 9(b). *Iqbal*, 556 U.S. at 678; *Ebeid*, 616 F.3d at 999.

More fundamentally, scienter as to falsity is impossible on the Complaint's own allegations. IBU *was* eligible when its loans were approved. One cannot "knowingly" submit a false certification of eligibility when the certification is, in fact, true. *See United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023) (FCA scienter "refers to a defendant's knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed"); *Hopper*, 91 F.3d at 1267 (FCA requires "an intentional, palpable lie"). The scienter element therefore fails twice over: once for lack of particularized pleading, and again for factual impossibility on the pleaded record.

### 3. Materiality likewise fails under *Escobar*.

The Supreme Court has made clear that FCA materiality is a "demanding" and "rigorous" standard. *Escobar*, 579 U.S. at 194. A misrepresentation is material only if it would have influenced the government's decision to pay. *Id.* at 193. Here, because IBU was statutorily eligible at the time of approval, any certification of eligibility was true, and any alleged misstatement could not have been material to the SBA's payment decision. The Complaint does not—and on its own allegations cannot—plead facts showing that some falsehood affected the SBA's decision to approve or forgive IBU's loans.

### 4. Group pleading cannot rescue the Complaint.

Where, as here, a complaint names multiple unrelated defendants, Rule 9(b) requires that fraud be pleaded as to each defendant separately. *Swoben*, 848 F.3d at 1182–83. The Complaint names twenty non-profit defendants across five different tax-exempt categories, with different eligibility dates, different loan amounts, and different approval timelines, and then alleges fraud against all of them in common paragraphs without differentiation. (*See* Compl. ¶¶ 38–48.) That is exactly the sort of "lumping" that Rule 9(b) prohibits. *Id.*

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

**D.  The Complaint's Defects Are Substantive and Incurable, and Dismissal Should Be With Prejudice.**

Leave to amend should be denied where amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). The defects identified above are not pleading errors that more detail can remedy; they are substantive.

The Complaint's own allegations establish that IBU was statutorily eligible for PPP funding at the time each of its loans was approved. No amendment can change that fact. No amendment can make true a certification already pleaded to be accurate. No amendment can manufacture scienter where the underlying statement was not false. No amendment can transform a reverse false claim theory that recycles the same conduct as the affirmative claims into an independently actionable theory. And no amendment can make a "fruit of the poisonous tree" label substitute for the per-claim falsity, scienter, and materiality the FCA requires—particularly when the supposed "tree" (IBU's first-draw loan) was itself lawfully approved.

Where, as here, the facts alleged foreclose FCA liability as a matter of law, further amendment would serve only to prolong meritless litigation against a small Idaho non-profit over loans totaling less than $10,000 in forgiveness. Dismissal with prejudice is the appropriate remedy.

## V.  CONCLUSION

For the reasons set forth above, IBU, without waiving any defense, respectfully requests that the Court dismiss Relator's Complaint against IBU in its entirety and with prejudice.

Dated: April 24, 2026                         Respectfully Submitted,

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

GORDON REES SCULLY MANSUKHANI, LLP


By: *Kelly Drew Rooksby*
_____
Kelly Drew Rooksby, ISB No. 9985
krooksby@grsm.com
Jacquelyn Pill, ISB #12855
jpill@grsm.com

421 W. Riverside Avenue, Suite 1555
Spokane, WA 99201
Tel: 509-252-5608

*Attorneys for Defendant Idaho Brewers United Corp.*

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## CERTIFICATE OF SERVICE

On April 24, 2026 I caused a true and correct copy of the foregoing document to be served by email via the Court's CM/ECF system upon the counsel and parties who have appeared in this matter:

| | |
|---|---|
| Ryan Dustin, Esq.<br><br>Casperson Ulrich Dustin<br><br>356 W. Sunnyside Road, Suite B<br><br>Idaho Falls, ID 83402<br><br>208-524-0566<br><br>rdustin@workandwage.com<br><br><br>*Attorney for Relator* | Electronic service (CM/ECF) |
| Bruce Ellis Fein, Esq.<br><br>Pro hac vice application pending<br><br>Law Office of Bruce Ellis Fein, PLLC<br><br>P.O. Box 506<br><br>Great Falls, VA 22066<br><br>703-248-0390<br><br>bruce@newdream.net<br><br><br>*Attorney for Relator* | Electronic service (CM/ECF) |

*/s/: Hannah Stafford*
Hannah Stafford Legal Secretary

IDAHO BREWERS UNITED CORP.'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)