Maureen L. Mitchell, ISB No. 8832
Jonathan M. Wasser *(pro hac vice pending)*
Fox Rothschild LLP
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Tel: 206.624.3600
Fax: 206.389.1708
Email: mmitchell@foxrothschild.com
jwasser@foxrothschild.com
*Attorneys for Defendant*
*Caldwell Elks Home Association*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| United States of America *ex rel*. The Tarbell Group, LLP,<br><br>Plaintiff,<br><br>v.<br><br>Appaloosa Horse Club, Blackfoot Chamber of Commerce Inc., Bonner County Association of Realtors Inc., Caldwell Elks Home Association, Capital City Public Market 1 Inc., Coeur D'Alene Chamber of Commerce, Grangeville Chamber of Commerce, Grangeville Country Club Inc., Greater Hayden / Hayden Lake Chamber of Commerce, Greater Sandpoint Chamber of Commerce Inc., Idaho Brewers United, Idaho Falls Downtown Development Corporation, Idaho Hospital Association, Idaho School Board Association, Jobs Plus Inc., Lewiston Golf and Country Club Inc., Mountain Home Chamber of Commerce, Ponderosa Aero Club Inc., Rathdrum Area Chamber of Commerce Inc., Shriners International, Silver Valley Economic Development Corporation and Unknown John or Jane Does,<br><br>Defendants. | Civil Action No. 3:25-cv-00145-DCN<br><br><br>**MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS** |

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S
MOTION TO DISMISS - 4
185462009.2

NOW COMES, Caldwell Elks Home Association ("Caldwell Elks"), by and through its counsel, Fox Rothschild LLP, and hereby submits the following Memorandum in Support of its Motion to Dismiss the Complaint of Relator The Tarbell Group LLP pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Relator The Tarbell Group, LLC ("Tarbell") is a Virginia limited liability company that filed this qui tam action under the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), naming twenty-one Idaho nonprofit entities as Defendants, Caldwell Elks among them. Caldwell Elks is a tax-exempt entity organized under Section 501(c)(2) of the Internal Revenue Code, located at 1015 North Kimball Avenue, Caldwell, Idaho. Tarbell contends that Caldwell Elks and the remaining defendants obtained Paycheck Protection Program ("PPP") loans prior to becoming eligible and advances three theories of FCA liability: (1) presentment of a false claim under 31 U.S.C. § 3729(a)(1)(A); (2) the use of a false record or statement material to a false claim under 31 U.S.C. § 3729(a)(1)(B); and (3) reverse false claims under 31 U.S.C. § 3729(a)(1)(G).

The complaint is fundamentally flawed and disregards well-established federal pleading requirements, especially those governing fraud claims. Caldwell Elks appears by name only in the caption, Paragraph 4, and a table of loan data appended to the complaint. Nowhere does the complaint set forth any individualized factual allegations directed at Caldwell Elks. Notably, the United States chose not to intervene. Tarbell has since voluntarily dismissed three defendants from this action, and several other defendants have moved to dismiss under Rule 12(b)(6). Caldwell Elks now also moves to dismiss.

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 5
185462009.2

Dismissal is warranted on two independent grounds. First, the complaint does not meet the heightened particularity mandate of Federal Rule of Civil Procedure 9(b) or the pleading standard set forth in *Twombly* and *Iqbal*, because it offers nothing more than boilerplate recitations of the FCA's elements without any particularized factual content directed at Caldwell Elks. Second, the reverse false claim theory under 31 U.S.C. § 3729(a)(1)(G) is legally untenable because it rests on identical conduct to the presentment and false-statement theories and does not identify any preexisting, established obligation to remit funds to the government.

## BACKGROUND

Tarbell initiated this qui tam action by filing its complaint under seal on March 14, 2025. The complaint targets twenty-one Idaho nonprofit organizations, asserting that each unlawfully received PPP loans. After the United States elected not to intervene, the Court ordered the complaint unsealed on February 23, 2026. Tarbell's original local counsel withdrew on April 6, 2026, prompting the Court to stay proceedings until substitute local counsel entered an appearance on April 28, 2026. Since then, Tarbell has voluntarily dismissed three defendants, and others have sought dismissal under Rule 12(b)(6). Caldwell Elks now moves for dismissal on the same basis, given the deficiencies in the complaint.

The complaint alleges that 501(c)(2) organizations like Caldwell Elks were not eligible for PPP loans until March 11, 2021. A table appended to the complaint purportedly reflects that Caldwell Elks' sole first-draw PPP loan (Loan No. 2123937404) totaling $22,382.00 received approval on May 5, 2020 and was subsequently forgiven in the

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 6

185462009.2

amount of $22,700.87 on October 12, 2021. Caldwell Elks obtained only one first-draw PPP loan and does not appear among the defendants implicated in the Second Cause of Action, which concerns "fruit of the poisonous tree" liability arising from second-draw loans.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint survives dismissal only if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The plaintiff must provide "'grounds' of his 'entitle[ment] to relief'" beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1179–80 (9th Cir. 2016) (quoting, *Iqbal* 556 U.S. at 678).

An FCA claim requires proof of "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due*." United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (quoting, *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006)); *United States ex rel. Rose v. Stephens Institute*, 909 F.3d 1012, 1017 (9th Cir. 2018).

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 7

185462009.2

FCA claims must additionally satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) mandates that a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In practice, this requires that the plaintiff identify "the 'who, what, when, where, and how of the alleged misconduct charged.'" *Swoben*, 848 F.3d at 1180 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The relator must also specify "what is false or misleading about a statement, and why it is false." *Id.*; *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). "[M]ere conclusory allegations of fraud are insufficient" and "[b]road allegations that include no particularized supporting detail" will not survive scrutiny. *Swoben*, 848 F.3d at 1180.

While courts ordinarily accept a plaintiff's factual assertions as true and draw all reasonable inferences in the plaintiff's favor on a Rule 12(b)(6) motion, they need "not . . . accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Whether a complaint states a plausible claim is ultimately "context-specific" requiring the "court to draw on its judicial experience and common sense.'" *Id.* at 664-65.

## ARGUMENT

### A. The Complaint Fails to Comply with the Heightened Specificity Requirements of Rule 9(b).

The complaint contains nothing beyond sweeping, generalized assertions as to Caldwell Elks and therefore falls short of Rule 9(b)'s particularity requirement. For each defendant, Caldwell Elks included, the complaint's substantive allegations are limited to the entity's tax-exempt classification, a loan-application address, and a row in an appended

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 8

table whose source is never identified. Beyond that, the complaint resorts to identical boilerplate directed at all defendants collectively rather than at any individual entity. In particular, the complaint asserts in purely conclusory terms that each defendant:

- "did knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval, to the injury of the United States, by falsely certifying that it, or the defendant on whose behalf he or she acted, was eligible for a PPP Loan and forgiveness thereof and thereby receiving the same" (Complaint, Dkt. 1, ¶ 40);

- "did knowingly make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim, to the injury of the United States, by falsely certifying that it, or the defendant on whose behalf he or she acted, was eligible for a PPP Loan and forgiveness thereof and thereby receiving the same" (Complaint, Dkt. 1, ¶ 41);

- "did knowingly make, use, or cause to be made or used, a false record or statement material to, or did knowingly conceal, or did knowingly and improperly avoid or decrease, an obligation to pay or transmit money or property to the United States government by falsely certifying that, or the defendant on whose behalf he or she acted, was eligible for a PPP Loan and forgiveness thereof and thereby receiving the same" (Complaint, Dkt. 1, ¶ 42).

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 9

These allegations amount to nothing more than rote, conclusory restatements of the statutory elements of an FCA violation and cannot sustain a claim upon which relief may be granted. *Iqbal*, 556 U.S. at 678.

No particularized factual detail supports these allegations as to any defendant, Caldwell Elks included. *Swoben*, 848 F.3d at 1180. Nowhere does the complaint identify: (1) the individual who submitted or caused the submission of a purportedly false claim on Caldwell Elks' behalf; (2) the date on which any such submission occurred; (3) the particular record or statement alleged to be false; (4) the manner in which the false record or statement was presented; or (5) how the alleged misrepresentation was material to any disbursement decision by the United States. Put simply, the complaint omits "the 'who, what, when, where, and how of the alleged misconduct charged.'" *Swoben*, 848 F.3d at 1180. It likewise neglects to explain "what is false or misleading about a statement, and why it is false." *Id.*; *Ebeid*, 616 F.3d at 998.

This deficiency is compounded by the complaint's equivocation regarding who allegedly made the false certification on behalf of Caldwell Elks—whether the entity itself or some unidentified employee or agent. Without identifying the person responsible for the alleged fraudulent acts, the complaint cannot establish the scienter that is central to FCA liability.

The FCA imposes liability only where a defendant acts "knowingly," 31 U.S.C. § 3729(a)(1)—meaning the defendant "'has actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard for the truth or falsity of the information.'" *Universal Health Servs., Inc. v. United States*

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 10

185462009.2

*ex rel. Escobar*, 579 U.S. 176, 182 (2016) (quoting 31 U.S.C. § 3729(b)(1)(A)). A knowingly false statement "means a lie." *Hagood v. Sonoma Cnty. Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996). This scienter standard is "rigorous" and demands "strict enforcement." *Escobar*, 579 U.S. at 178, 181. Mere negligence does not suffice. *See U.S. ex rel. Plumbers & Steamfitters Local Union No. 38 v. C.W. Roen Const. Co.*, 183 F.3d 1088, 1092 (9th Cir. 1999). Nor do innocent mistakes, inadvertent misstatements, or reasonable differences in interpretation give rise to FCA liability. *See United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996) (citing *Hagood*, 81 F.3d at 1478).

Because the complaint is devoid of factual allegations concerning who submitted or caused the submission of a claim on Caldwell Elks' behalf, under what circumstances the submission occurred, or what that person knew at the time, it fails to satisfy the FCA's scienter requirement and does not state a viable claim.

The complaint further neglects to identify any specific document—or the content of any document—that allegedly constitutes the false claim for payment or approval (Complaint, Dkt. 1, ¶ 40), the false record or material statement (Complaint, Dkt. 1, ¶ 41), or the false record or statement used to conceal or diminish an obligation to the government (Complaint, Dkt. 1, ¶ 42).

In sum, Tarbell has not alleged the who, what, when, where, or how of any purported fraud perpetrated by Caldwell Elks, as Rule 9(b) demands. The complaint instead relies on boilerplate statutory language and conclusory assertions of fraud lacking any factual grounding—precisely the kind of pleading that cannot support a claim for relief. *Iqbal*, 556

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 11
185462009.2

U.S. at 678. Because the complaint satisfies neither *Iqbal*'s plausibility standard nor Rule 9(b)'s particularity requirement, this Court should dismiss all claims against Caldwell Elks.

**B.      Tarbell's Reverse False Claim Theory Is Fatally Flawed and Does Not Assert a Claim for Which Relief May Be Granted.**

The reverse false claim theory asserted in Paragraph 42 under 31 U.S.C. § 3729(a)(1)(G) is defective for two separate and independent reasons (Complaint, Dkt. 1, ¶ 42).

### 1.      *The Reverse False Claim Theory Is Based on the Same Conduct as the Presentment and False Statement Theories.*

Section 3729(a)(1)(G) of the FCA creates liability for the knowing use of a false record or statement that is material to an obligation to pay or transmit money to the Government. Unlike traditional FCA claims, which target efforts to extract money from the government, "reverse" FCA liability addresses fraud designed to evade a debt owed to the government. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011).

Critically, a viable reverse false claim must rest on an obligation to pay that exists independently of the fraudulent conduct through which the defendant allegedly obtained government funds. *See Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F.Supp.3d 1096, 1119–20 (D. Hawaii 2021); *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119–20 (2d Cir. 2021).

Here, the reverse false claim alleged in Paragraph 42 of the complaint mirrors the presentment theory of Paragraph 40 and the false-statement theory of Paragraph 41. All three paragraphs employ virtually identical language to assert that each nonprofit defendant

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 12

185462009.2

"knowingly" violated the FCA by "falsely certifying that" it was "eligible for a PPP Loan and forgiveness thereof and thereby receiving the same." The complaint identifies no distinct act, no different point in time, and no separate false statement to support the reverse false claim as an independent theory of liability. Tarbell has merely repackaged a single alleged certification under three different statutory subsections.

Such claim-stacking is impermissible. As the Second Circuit noted, "a reverse false claim cannot turn on the same conduct underlying a traditional false claim." *Foreman*, 19 F.4th at 119. To hold otherwise would mean that "any time a defendant violated sub-sections (a)(1)(A) or (B) and received payment, the defendant would also necessarily violate sub-section (G) if it failed to repay to the Government the fraudulently-obtained payments"—effectively rendering § 3729(a)(1)(G) a superfluous appendage to every FCA action. *Id.* at 120. *See also United States v. Kinetic Concepts, Inc.*, 2017 WL 2713730, at *13–14 (C.D. Cal. Mar. 6, 2017) ("In cases where a plaintiff alleges a reverse false claim by claiming that the defendant fraudulently overcharged the government, courts have consistently dismissed the claim as redundant of false statement and presentation claims."); *United States ex rel. Kyer v. Thomas Health Sys., Inc.*, 756 F.Supp.3d 75, 91 (S.D. W. Va. 2024) ("The FCA does not contain a two-for-one deal. Without more, the reverse false claims would be redundant to the preceding false claims.").

The Ninth Circuit follows this principle. The *Cafasso* court observed that the reverse false claims provision "does not eliminate or supplant the FCA's false claim requirement; it rather expands the meaning of a false claim to include statements to avoid paying a debt." 637 F.3d at 1056. And in *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 13

185462009.2

Cir. 2017), the Ninth Circuit reaffirmed that a reverse false claim theory grounded in the same conduct as an affirmative false claim cannot stand independently.

Importantly, this District has reached the same conclusion in the analogous Small Business Association ("SBA") loan context. In *United States ex rel. Houpt v. Wells Fargo Bank, N.A.*, 2019 WL 591441 (D. Idaho 2019) (J. Dale), the court dismissed a reverse false claim tied to an SBA loan program because the plaintiff could not point to an obligation independent of the underlying fraud. The court relied on *Cafasso* in reasoning that "'reverse' FCA liability stems from a fraud perpetuated to avoid a debt to the government, rather than to obtain payment from the government." *Id.* at *10.

The same outcome is compelled here. Paragraph 42 points to no obligation that predates or exists apart from the alleged eligibility fraud—it rests solely on the purported duty to return funds acquired through that very fraud. This theory is foreclosed by *Foreman*, *Cafasso*, *Kelly*, *Torricer*, *Kyer*, *Kinetic Concepts*, and *Houpt*.

In *Torricer*, the court surveyed the case law and concluded that "the court agrees with the substantial authority holding that an actionable reverse false claim cannot be based on a defendant's failure to refund the same payment that was obtained by an actionable false claim. Such a claim under § 3729(a)(1)(G) would be redundant of the original claim." 512 F.Supp.3d at 1119. *See also United States ex rel. Behnke v. CVS Caremark Corp.*, 2020 WL 1953626, at *10 (E.D. Pa. Apr. 23, 2020) ("[I]n order to plausibly allege a violation of § 3729(a)(1)(G), a plaintiff cannot merely recast his false statement claim by essentially alleging that the defendant failed to refund the false claims that the government paid."); *United States ex rel. Martino-Fleming v. S. Bay Mental Health Ctr.*, 2018 WL 4539684, at

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S
MOTION TO DISMISS - 14

185462009.2

*6 (D. Mass. Sept. 21, 2018) ("Nor can reverse-FCA liability be premised solely on the same conduct that gives rise to traditional presentment or false-statement claims.").

Because Tarbell has not identified any basis for its reverse false claim that is independent of the purported fraud underlying its presentment and false-statement theories, Paragraph 42 fails to state a cognizable claim under 31 U.S.C. § 3729(a)(1)(G).

### 2. The Complaint Fails to Allege Any Pre-Existing Established Duty to Pay the Government.

Independently, the reverse false claim provision reaches only those situations where a defendant possesses a pre-existing "established duty" that it knowingly conceals or improperly avoids. 31 U.S.C. § 3729(a)(1)(G); *id.* § 3729(b)(3) (defining "obligation" as an "established duty"). The Ninth Circuit has recently underscored that the FCA "requires that a legal obligation to pay the government be 'established' at the time the false statement or record is made," and that "the obligation cannot be merely a potential liability." *United States ex rel. Lesnik v. ISM Vuzem, D.O.O, et al.*, 112 F.4th 816, 820 (9th Cir. 2024).

The complaint is silent on any preexisting established duty owed by Caldwell Elks to the government. To the extent Tarbell's theory assumes Caldwell Elks owed a duty to return funds procured by fraud, such a duty is at most a contingent liability that depends on governmental detection and enforcement—not an "established duty" within the meaning of § 3729(b)(3). Courts consistently so hold. *See Lesnik*, 112 F.4th at 820; *United States ex rel. Landis v. Tailwind Sports Corp.*, 160 F.Supp.3d 253, 268–69 (D.D.C. 2016) (observing that contingent obligations—those arising only upon the exercise of governmental discretion—fall outside the FCA's reach).

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 15
185462009.2

For each of these independent reasons, the complaint fails to assert a basis for its reverse false claim that is independent of the underlying fraud claims, and the Court should dismiss Paragraph 42 and any cause of action under 31 U.S.C. § 3729(a)(1)(G).

## CONCLUSION

The complaint is fundamentally inadequate as to Caldwell Elks. It lacks the factual specificity that *Iqbal* and Rule 9(b) demand, offering only boilerplate restatements of the FCA's statutory elements with no particularized allegations directed at Caldwell Elks. The complaint does not identify who allegedly made false certifications on Caldwell Elks' behalf, when those certifications were made, what documents or statements embody the alleged false claims, or how those statements influenced any government disbursement decision. The reverse false claim theory under 31 U.S.C. § 3729(a)(1)(G) is independently defective because it identifies no conduct distinct from the presentment and false-statement theories and alleges no pre-existing established obligation to pay the government. Tarbell has thus failed to plead any claim upon which relief can be granted against Caldwell Elks.

For these reasons, Defendant Caldwell Elks Home Association respectfully asks this Court to grant its Motion to Dismiss under Rule 12(b)(6) and to dismiss all claims against it with prejudice.

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S MOTION TO DISMISS - 16
185462009.2

DATED this 27th day of May, 2026.

FOX ROTHSCHILD LLP

*s/ Maureen L. Mitchell*

Maureen L. Mitchell, ISB No. 8832
Jonathan M. Wasser *(pro hac vice forthcoming)*

*Attorneys for Defendant*
*Caldwell Elks Home Association*

185462009.2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of May, 2026, I caused to be served a

true and correct copy of the foregoing document, by the following:

| | | |
|---|---|---|
| Bruce Ellis Fein, Esq. *Pro hac vice application pending* Law Office of Bruce Ellis Fein, PLLC Attorney for Relator | ☒ | Electronic Service (CM/ECF) bruce@newdream.net |
| T. Jason Wood Wood Law Group, PC Attorney for Relator | ☒ | Electronic Service (CM/ECF) jason@woodlaw.net |
| United States Attorney's Office District of Idaho 1290 West Myrtle St.; Ste 500 Boise, ID 83702 | ☒ | U.S. Mail |

/s/ Maureen L. Mitchell
Maureen L. Mitchell
*Attorney for Defendant*
*Caldwell Elks Home Association*

Maureen L. Mitchell, ISB No. 8832
Jonathan M. Wasser *(pro hac vice pending)*
Fox Rothschild LLP
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
Tel: 206.624.3600
Fax: 206.389.1708
Email: mmitchell@foxrothschild.com
jwasser@foxrothschild.com
*Attorneys for Defendant*
*Caldwell Elks Home Association*

MEMORANDUM IN SUPPORT OF CALDWELL ELKS HOME ASSOCIATION'S
MOTION TO DISMISS - 18
185462009.2