Joshua D. Hurwit (ISB #9527)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  208.342.5000
jdhurwit@hollandhart.com

Nathan Lilly (*pro hac vice*)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8000
nalilly@hollandhart.com

*Attorneys for Defendants Coeur d'Alene Regional Chamber of Commerce; Idaho Falls Downtown Development Corporation; Jobs Plus, Inc. dba Coeur d'Alene Area Economic Development Corporation; and Idaho School Boards Association*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. THE TARBELL GROUP, LLC,<br><br>        Plaintiff,<br><br>vs.<br><br>APPALOOSA HORSE CLUB, BLACKFOOT CHAMBER OF COMMERCE INC., BONNER COUNTY ASSOCIATION OF REALTORS INC., CALDWELL ELKS HOME ASSOCIATION, CAPITAL CITY PUBLIC MARKET 1 INC., COEUR D'ALENE CHAMBER OF COMMERCE, GRANGEVILLE CHAMBER OF COMMERCE, GRANGEVILLE COUNTRY CLUB INC., GREATER HAYDEN / HAYDEN LAKE CHAMBER OF COMMERCE, GREATER SANDPOINT CHAMBER OF COMMERCE INC., IDAHO BREWERS UNITED, IDAHO FALLS DOWNTOWN DEVELOPMENT CORPORATION, IDAHO HOSPITAL ASSOCIATION, IDAHO SCHOOL BOARDS ASSOCIATION, JOBS | Case No. 3:25-cv-00145-DCN<br><br>**DEFENDANTS COEUR D'ALENE REGIONAL CHAMBER OF COMMERCE, IDAHO FALLS DOWNTOWN DEVELOPMENT CORPORATION, JOBS PLUS, INC. DBA COEUR D'ALENE AREA ECONOMIC DEVELOPMENT CORPORATION, AND IDAHO SCHOOL BOARDS ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

PLUS INC., LEWISTON GOLF AND
COUNTRY CLUB INC., MOUNTAIN HOME
CHAMBER OF COMMERCE, PONDEROSA
AERO CLUB INC., RATHDRUM AREA
CHAMBER OF COMMERCE INC.,
SHRINERS INTERNATIONAL, SILVER
VALLEY ECONOMIC DEVELOPMENT
CORPORATION, and UNKNOWN JOHN OR
JANE DOES,

        Defendants.

Defendants Coeur d'Alene Regional Chamber of Commerce ("CdA Chamber"), Idaho

Falls Downtown Development Corporation ("IFDDC"), Jobs Plus, Inc. dba Coeur d'Alene Area

Economic Development Corporation ("CdAEDC"), and Idaho School Boards Association

("ISBA") (collectively, "Defendants") respectfully submit this memorandum in support of their

motion to dismiss the Complaint filed by Relator The Tarbell Group, LLC ("Relator").[1]

### INTRODUCTION

Relator is a Virginia LLC whose sole purpose is to serve as a False Claims Act ("FCA")

relator, mining publicly available federal databases to identify organizations that obtained

COVID-era Paycheck Protection Program ("PPP") loans. Relator then exploits the FCA's qui

tam provisions to extract settlements from those organizations. To do so, Relator has filed at least

13 other lawsuits across eight federal districts in Massachusetts, Iowa, Texas, Tennessee,

Virginia, and Maryland.[2] Relator now brings this FCA roadshow to Idaho, filing a shotgun

---

[1] To comply with the Court's practice standards, on May 28, 2026, undersigned counsel conferred with Relator's counsel over videoconference to discuss the Complaint's deficiencies. The parties did not come to an agreement regarding an amended complaint.

[2] *Tarbell Grp. v. Mid-E. Athletic Conf.*, No. 1:24-cv-849 (E.D. Va., filed May 21, 2024); *Tarbell Grp. v. Lake Monticello Owners Ass'n*, No. 3:24-cv-39 (W.D. Va., filed May 24, 2024); *Tarbell Grp. v. Simbeck, Inc.*, No. 5:24-cv-46 (W.D. Va., filed June 28, 2024); *Tarbell Grp. v. Am. Acad. of Facial Plastic & Reconstructive Surgery*, No. 1:24-cv-1245 (E.D. Va., filed July 17, 2024); *Tarbell Grp. v. Acoaxet Club, Inc.*, No. 1:24-cv-11950 (D. Mass., filed July 26, 2024);

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 2**

Complaint naming 21 unrelated Idaho nonprofits as defendants, alleging that each falsely certified eligibility for PPP loans. The Government declined to intervene in Relator's lawsuit.

The Court should dismiss the Complaint in its entirely—and with prejudice—for two overarching reasons.

- *First*, the FCA's public-disclosure bar requires dismissal because Relator's allegations are based entirely on publicly available information (the SBA's publicly released PPP loan database, IRS Form 990 filings, and statutory eligibility dates), and Relator does not qualify as an "original source."

- *Second*, even if the public-disclosure bar does not apply, the Complaint fails to state a claim under Rules 12(b)(6) and 9(b) because Relator does not plead scienter or materiality with the particularity that the FCA demands.

Either of these flaws warrants dismissal of the entire Complaint.

Independent of these arguments, the Court should also dismiss portions of the Complaint for two other reasons:

- Relator's reverse-false-claim theory improperly duplicates its traditional FCA claim and also fails because it is not based on an alleged "established duty" to pay the government.

- Relator's Second Cause of Action—premised on a novel "fruit of the poisonous tree" theory that second-draw PPP loans are automatically tainted by allegedly improper first-draw loans—fails to state a claim. The Complaint pleads no facts about any false certification in any second-draw application. Indeed, the second-draw loans at issue were all approved after the Defendants became eligible for PPP funds.

---

*Tarbell Grp. v. W. Ass'n of Fish & Wildlife Agencies*, No. 1:25-cv-144 (D. Idaho, filed Mar. 14, 2025); *Tarbell Grp. v. Am. Acad. of Env. Eng'rs & Scientists Inc.*, No. 1:25-cv-915 (D. Md., filed Mar. 19, 2025); *Tarbell Grp. v. Barrelville Outdoor Club*, No. 1:25-cv-916 (D. Md., filed Mar. 19, 2025); *Tarbell Grp. v. Adams Cmty. Econ. Dev. Corp.*, No. 4:25-cv-119 (S.D. Iowa, filed Mar. 31, 2025); *Tarbell Grp. v. Clear Lake City Cmty. Ass'n*, No. 4:25-cv-1494 (S.D. Tex., filed Apr. 1, 2025); *Tarbell Grp. v. Chattanooga Area Convention & Visitors Bureau Inc.*, No. 1:25-cv-110 (E.D. Tenn., filed Apr. 2, 2025); *Tarbell Grp. v. Loudoun Med. Grp.*, No. 1:25-cv-1080 (E.D. Va., filed June 30, 2025); *Tarbell Grp. v. Glen Allen Cmty. Ctr.*, No. 3:25-cv-652 (E.D. Va., filed Aug. 18, 2025). Untold others may remain under seal.

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 3**

Because these defects are incurable, the Court should dismiss the Complaint with prejudice.

## FACTUAL ALLEGATIONS

To provide economic relief during the COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (Mar. 27, 2020), which established the PPP. The U.S. Small Business Administration ("SBA") implemented the PPP, which took the form of private loans guaranteed, forgiven, and reimbursed by the SBA. Relator alleges that tax-exempt IRC § 501(c)(6) nonprofit organizations became eligible for PPP loans on December 27, 2020. (Compl. ¶ 32.) Each of the Defendants bringing this Motion is a § 501(c)(6) organization.

The Complaint's attached table sets forth the following loan data for Defendants:

| DEFENDANT | FIRST-DRAW LOAN AMOUNT & DATE | SECOND-DRAW LOAN AMOUNT & DATE |
|---|---|---|
| CdA Chamber | $165,000 April 12, 2020 | $151,616 March 1, 2021 |
| IFDCC | $23,100 April 8, 2020 | $22,297.50 January 21, 2021 |
| CdAEDC | $57,932.50 April 29, 2020 | $56,750 March 26, 2021 |
| ISBA | $168,700 April 15, 2020 | None |

Each Defendant's first-draw loan was approved before December 27, 2020, but all three second-draw loans were approved *after* Relator recognizes that 501(c)(6) organizations became eligible for the program.

## PROCEDURAL BACKGROUND

On March 14, 2025, Relator filed its Complaint under seal. On February 20, 2026, after investigating Relator's allegations, the United States declined to intervene. Three days later, the Court unsealed the Complaint. Several defendants, including Lewiston Golf & Country Club,

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 4**

Inc. (Dkt. 24), Appaloosa Horse Club (joining Lewiston Golf's motion, Dkt. 25), Ponderosa Aero

Club, Inc. (Dkt. 38), and Capital City Public Market 1 Inc. (Dkt. 40), have already moved to

dismiss under Rule 12(b)(6). Defendants join in and incorporate by reference the arguments and

authorities from those motions to dismiss and submit the following additional arguments in

further support of dismissal.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if Relator has "fail[ed] to

state a claim upon which relief can be granted." To survive a motion to dismiss, the Complaint

must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007). This "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. While the Court

must accept well-pleaded factual allegations in a Complaint as true, it must disregard

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because FCA claims sound in fraud, Relator must also satisfy Rule 9(b), which requires a

plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

This means Relator must allege the "who, what, when, where, and how of the misconduct

charged." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). This

includes "what is false or misleading about a statement, and why it is false." *Id.* "Mere

conclusory allegations of fraud are insufficient," as are "[b]road allegations that include no

particularized supporting detail." *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848

F.3d 1161, 1180 (9th Cir. 2016). Rule 9(b) also requires Relator to "separately" plead fraud for

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 5**

each defendant; undifferentiated allegations that "lump multiple defendants together" do not suffice. *Id.* at 1184.

## ARGUMENT

### I.    The FCA's Public-Disclosure Bar Requires Dismissal.

The FCA's public-disclosure bar mandates that the Court "dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in (i) a federal criminal, civil, or administrative hearing; (ii) a federal report, hearing, audit, or investigation; or (iii) the news media. 31 U.S.C. § 3730(e)(4)(A). This bar serves Congress's purpose of "strik[ing] a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010). And the public disclosure bar is appropriately resolved on a motion to dismiss. *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 953 (8th Cir. 2017).

The Ninth Circuit breaks § 3730(e)(4)(A)'s test into three elements: "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was public; and (3) the relator's action is substantially the same as the allegation or transaction publicly disclosed." *United States v. Allergan, Inc.*, 46 F.4th 991, 996 (9th Cir. 2022) (internal quotation marks omitted).

If the public-disclosure bar applies, this case may proceed only if Relator establishes that it is an "original source" of the information, meaning that Relator either (i) disclosed the information to the Government before the public disclosure or (ii) "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and disclosed this information to the government before filing suit. 31 U.S.C. § 3730(e)(4)(B).

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 6**

The public-disclosure bar applies here; Relator is not an original source; and so the Court must dismiss the Complaint.

### A. The First Two Elements of the Public Disclosure Bar Are Satisfied Because Everything in the Complaint Was Publicly Disclosed.

For the public-disclosure bar to apply, the disclosure must have occurred through one of the channels specified in the statute and be "public." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 574 (9th Cir. 2016). Both requirements are met for each building block of the Complaint.

First, the loan information that Relator mined to identify its targets is publicly disclosed. The SBA maintains a publicly accessible database at https://data.sba.gov/dataset/ppp-foia (formerly housed on PandemicOversight.gov) that contains large Comma-Separated Values ("CSV") files[3] with detailed data on every PPP borrower in the country, including each of the Defendants filing this Motion (the "SBA PPP Database"). CdA Chamber's and ISBA's data are in the CSV filed titled "public_150k_plus_240930.csv," and CdAEDC and IFDDC's data can be found in "public_up_to_150k_4_240930.csv." For each PPP loan, these files include borrower names, addresses, loan amounts, loan approval dates, forgiveness dates, forgiveness amounts, lender names, and North American Industry Classification System ("NAICS") codes.[4] The data

---

[3] "A CSV file is a text file that stores data in a table format." *What is a CSV file?*, Adobe, https://www.adobe.com/acrobat/resources/document-files/what-is-a-csv-file.html (last visited May 29, 2026). In practice, a CSV file is like an Excel spreadsheet that holds more data and is more widely compatible.

[4] "The North American Industry Classification System (NAICS) is the standard used by Federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy." *Introduction to NAICS*, U.S. Census Bureau, https://www.census.gov/naics/ (last visited May 29, 2026). The 2017 NAICS, in place when Defendants applied for their PPP loans, can be found at https://www.census.gov/naics/reference_files_tools/2017_NAICS_Manual.pdf.

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 7**

are freely downloadable by any member of the public without restriction and have been available online for years.[5] And they are subject to judicial notice under Fed. R. Evid. 201(b)(2) and can be considered on this motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining when public records are subject to judicial notice).[6]

The SBA PPP Database is a publicly disclosed "federal report" under 31 U.S.C. § 3730(e)(4)(A). "Report" has a "broad ordinary meaning" of "something that gives information or a notification, or an official or formal statement of facts or proceedings." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407–08 (2011) (cleaned up). Again, the SBA PPP Database publishes detailed information on each of the millions of PPP borrowers. The Court should join the chorus of district courts that agree that this makes the SBA PPP Database a federal report. *E.g.*, *Kootstra*, 2024 U.S. Dist. LEXIS 139497, at *9 ("[PandemicOversight.gov] constitutes a 'federal report' within the meaning of the public disclosure bar."); *United States v. Herbst*, No. 2:24-CV-2277, 2026 U.S. Dist. LEXIS 44113, at *24 (D. Nev. Mar. 4, 2026) ("[T]he PPP loan information found on PandemicOversight.gov and USA Today is a public disclosure."); *United States v. Pape*, No. 24-cv-01001, 2025 U.S. Dist. LEXIS 264558, at *9–10 (N.D. Cal. Dec. 22, 2025) ("SBA.gov (and its predecessor PandemicOversight.gov) are indeed federal

---

[5] These data became public in late 2020 after news organizations won a FOIA suit against the SBA. *See WP Co. v. U.S. SBA*, 502 F. Supp. 3d 1, 28 (D.D.C. 2020).

[6] Courts consistently hold that the SBA PPP Database and its data are public records subject to judicial notice. *See, e.g.*, *United States v. Jones*, No. 22-cv-03954, 2025 U.S. Dist. LEXIS 228988, at *4 (N.D. Cal. Nov. 20, 2025) (taking judicial notice of data on https://data.SBA.gov/dataset/ppp-foia); *United States v. Williams*, No. 22-cv-04957, 2025 U.S. Dist. LEXIS 270478, at *5 (N.D. Cal. June 27, 2025) (taking judicial notice of data on PandemicOversight.gov); *United States ex rel. Relator LLC v. Erskine*, No. 22cv1158, 2025 U.S. Dist. LEXIS 46469, at *2 n.1 (S.D. Cal. Feb. 25, 2025) (same); *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-cv-00924, 2024 U.S. Dist. LEXIS 139497, at *8 n.2 (E.D. Cal. Aug. 5, 2024) (same).

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 8**

reports under Section 3730(e)(4)(A)(ii) . . . ."); *Jones*, 2025 U.S. Dist. LEXIS 228988, at *8 ("[I]nformation published on the data.sba.gov constitutes a federal report.").[7]

Next, the fact that each Defendant is a tax-exempt 501(c)(6) organization—another predicate of Relator's theory—is publicly available. Defendants' 501(c)(6) status can be confirmed by reviewing their publicly available IRS Form 990 filings from 2018 (the most recent year before the loan applications). The IRS makes Form 990 returns available to the public under 26 U.S.C. § 6104, and they are accessible through IRS.gov[8] and third-party databases such as ProPublica's Nonprofit Explorer. The Court can take judicial notice of these publicly filed tax documents. *See Africare, Inc. v. Xerox Complete Document Sols. Md., LLC*, 436 F. Supp. 3d 17, 45 n.21 (D.D.C. 2020) (taking judicial notice of Form 990); *Flaa v. Hollywood Foreign Press Ass'n*, No. 2:20-cv-06974, 2020 U.S. Dist. LEXIS 248478, at *6–7 (C.D. Cal. Nov. 20, 2020) (same). In addition, the NAICS codes listed in the SBA PPP Database independently confirm each Defendant's organizational classification, corroborating their 501(c)(6) status. *See Kootstra*, 2024 U.S. Dist. LEXIS 139497, at *11 (the SBA PPP Database's NAICS code revealed that the defendant was a mortgage lender ineligible for a PPP loan, so the public-disclosure bar applied).

Finally, the date on which 501(c)(6) organizations became eligible for PPP loans was publicly established by the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues

---

[7] Alternatively, ProPublica's website https://projects.propublica.org/coronavirus/bailouts/, which hosts similar data, counts as a public disclosure by the "news media." *United States ex rel. Relator LLC v. Sunshine*, No. 8:23-cv-00134, 2025 U.S. Dist. LEXIS 191094, at *9 (C.D. Cal. June 30, 2025).

[8] Defendants' 2018 forms are attached to this Motion as **Exhibits A–D** and are available at https://apps.irs.gov/pub/epostcard/cor/820109321_201812_990O_2020021017130762.pdf; https://apps.irs.gov/pub/epostcard/cor/820467139_201909_990O_2020092317323405.pdf; https://apps.irs.gov/pub/epostcard/cor/820413341_201812_990O_2019061316408512.pdf; https://apps.irs.gov/pub/epostcard/cor/820224921_201906_990O_2019120616932028.pdf.

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 9**

Act, Division N, Title III, Section 318 of the Consolidated Appropriations Act of 2021, Pub. L.

No. 116-260, 134 Stat. 1182, 2013 (Dec. 27, 2020), and associated regulations.

In sum, the first two elements of the public-disclosure bar are met, as all the foundational

information for Relator's allegations was publicly disclosed—and easily accessible—through

government reports.

> **B.    The Third Element of the Public Disclosure Bar Is Satisfied Because Relator's Allegations Are Substantially Similar to the Publicly Disclosed Information.**

The third element of the public-disclosure bar requires that Relator's allegations be

substantially the same as the publicly disclosed allegations or transactions. The Ninth Circuit has

illustrated this concept using a "$X + Y = Z$" formula: the public-disclosure bar applies when the

publicly disclosed information reveals both the misrepresented state of facts (X) and the true

state of facts (Y), such that the inference of fraud (Z) is apparent. *Mateski*, 816 F.3d at 571.

Relator's theory is a textbook case of $X + Y = Z$:

- "X" is the misrepresented state of facts: According to the Relator, each Defendant certified that it was eligible for a PPP loan at the time of its application. Yet the SBA PPP Database discloses the loan-approval dates for each Defendant, revealing around when each certification was made.

- "Y" is the true state of facts: According to the Relator, 501(c)(6) organizations like Defendants were not eligible for PPP loans until December 27, 2020. Yet the statutory eligibility dates are set forth in public legislation and regulations, and each Defendant's 501(c)(6) status is confirmed by publicly available IRS Form 990 filings and corroborated by the NAICS codes in the SBA PPP Database.

- "Z" is the inference of fraud: Comparing the loan approval dates (X) against the eligibility dates and tax-exempt status (Y), any member of the public (or government official) could infer that certain organizations received PPP loans before they were eligible—the precise "fraud" that Relator alleges.

Relator's Complaint includes *nothing* from any nonpublic source: no insider testimony,

no ex-employee statement, no whistleblower communication, no internal communications, no

documents obtained through any relationship with any Defendant, and no information about the

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 10**

circumstances, intent, or knowledge of the people who completed the loan applications. Relator's Complaint is not merely "substantially similar" to information in the public domain; it is a pure repackaging of public information. This is a classic case for application of the public-disclosure bar because the provision is aimed at "discouraging litigation by plaintiffs who have no significant information of their own to contribute." *Mateski*, 816 F.3d at 570; *see also Prather v. AT&T, Inc.*, 847 F.3d 1097, 1104 (9th Cir. 2017) ("To have direct knowledge under the statute, a person's knowledge must be firsthand, obtained through his own labor, and unmediated by anything else.").

Relator may resist this conclusion by arguing that the PPP loan data, 501(c)(6) status, and PPP-eligibility statute exist in separate places. But this does not save the Complaint. "[W]hen different public disclosures, pieced together, present the full picture of fraud, the public disclosure bar applies." *United States v. Sunshine*, No. 8:23-cv-00134, 2025 U.S. Dist. LEXIS 209232, at *15 (C.D. Cal. Oct. 23, 2025) (citing *Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1168 (9th Cir. 2024)).

Relator may also claim that it synthesized the publicly available data in a unique way. But even a relator with some sort of specialized ability to understand publicly available information, or a relator that spent many hours compiling public data, is not immune from the public-disclosure bar. *See United States ex rel. JDJ & Assocs. LLP v. Natixis*, No. 15-cv-5427, 2017 U.S. Dist. LEXIS 164106, at *17–19 (S.D.N.Y. Sept. 29, 2017) (collecting cases); *Bates ex rel. Bates v. Mortg. Elec. Registration Sys.*, 694 F.3d 1076, 1081 (9th Cir. 2012) ("A relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation already have been publicly disclosed." (quotation omitted)). The key is that the public data put the government "on notice" about

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 11**

Defendants' potential PPP-loan ineligibility long before Relator filed suit. *United States ex rel. Relator LLC v. Nations Direct Mortg., LLC*, No. 2:22-cv-04784, 2026 U.S. Dist. LEXIS 1871, at *11 (C.D. Cal. Jan. 5, 2026).

Because all three of its elements are satisfied, the public-disclosure bar applies.

### C.    Relator Is Not an Original Source.

Because the public-disclosure bar applies, the action may proceed only if Relator proves that it is an original source of the information. 31 U.S.C. § 3730(e)(4)(B); *United States ex rel. Solis v. Millennium Pharms., Inc.*, 445 F. Supp. 3d 786, 795 (E.D. Cal. 2020) (whether relator is an original source is *relator's* burden to show), *aff'd*, 852 F. App'x 298 (9th Cir. 2021). Relator has not met that burden.

First, there are zero allegations that Relator disclosed its allegations to the government before those allegations became public or before Relator filed suit. This is enough to hold that Relator is not an original source.

Second, Relator doesn't claim to possess "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B). "Qui tam is an enforcement mechanism for insiders," *Jones*, 2025 U.S. Dist. LEXIS 228988, at *9, and Relator is nothing of the sort. Again, the Complaint contains no allegation that Relator had any independent knowledge of any Defendant's PPP loan applications, internal operations, or decision-making. *See Prather*, 847 F.3d at 1104. There is no allegation that Relator had any relationship with any Defendant, that anyone associated with the Relator was employed by or associated with any Defendant, or that Relator possessed any information about these Defendants' PPP loans that was not already available in the SBA PPP Database. It bears repeating that Relator is an LLC and a professional relator with a place of business over 2,000

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 12**

miles from Defendants—not a whistleblower with inside information. Data miners like Relator cannot satisfy the original-source exception.

Applying the public-disclosure bar here would align this Court with sister district courts in the Ninth Circuit that have dismissed qui tam suits brought by SBA PPP Database miners like Relator. *See, e.g.*, *Kootstra*, 2024 U.S. Dist. LEXIS 139497, at *14; *United States ex rel. Relator LLC v. Kellog*, No. 23-cv-118, 2024 U.S. Dist. LEXIS 214357, at *10 (S.D. Cal. Nov. 25, 2024); *Erskine*, 2025 U.S. Dist. LEXIS 46469, at *15; *Relator LLC v. Lim*, No. 22-cv-04715, 2025 U.S. Dist. LEXIS 271527, at *18 (N.D. Cal. Apr. 22, 2025); *Sunshine*, 2025 U.S. Dist. LEXIS 191094, at *15; *United States ex rel. Relator LLC v. Cardinalli*, No. 5:23-cv-00113, 2025 U.S. Dist. LEXIS 271134, at *12 (C.D. Cal. Sept. 15, 2025); *United States v. Shupe*, No. 2:23-cv-00504, 2025 U.S. Dist. LEXIS 215334, at *18 (C.D. Cal. Oct. 30, 2025); *United States v. Hodges*, No. 2:22-cv-05200, 2025 U.S. Dist. LEXIS 267325, at *13 (C.D. Cal. Nov. 7, 2025); *United States ex rel. Relator LLC v. Shupe*, No. 2:23-cv-00504, 2025 U.S. Dist. LEXIS 270704, at *18 (C.D. Cal. Nov. 13, 2025); *Jones*, 2025 U.S. Dist. LEXIS 228988, at *9; *Nations Direct Mortg.*, 2026 U.S. Dist. LEXIS 1871, at *11; *United States ex rel. Relator LLC v. Cardinalli*, No. 5:23-cv-00113, 2026 U.S. Dist. LEXIS 26557, at *12 (C.D. Cal. Feb. 9, 2026).

In sum, because the public-disclosure bar applies and Relator is not an original source, the Court must dismiss the action.

## II.    The Complaint Fails to State a Claim Under Rules 12(b)(6) and 9(b).

Even if the public-disclosure bar does not apply, the Complaint should be dismissed for failure to state a claim. For its FCA claims, Relator must plausibly allege "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017). Each element must be pleaded with the

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 13**

particularity required by Rule 9(b). *See id.* at 898. Here, Relator fails to adequately plead scienter and materiality—twin requirements that the Supreme Court has labeled as "rigorous." *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 192 (2016).

### A.    The Complaint Fails to Adequately Plead Scienter.

"The scienter requirement is critical to the operation of the False Claims Act," *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998), and Relator's conclusory pleading of this element is fatal. FCA liability attaches only when a defendant "knowingly" submits a false claim, which requires actual knowledge, deliberate ignorance, or recklessness. 31 U.S.C. § 3729(b)(1)(A). Relator must "must set out sufficient factual matter from which [Defendants'] knowledge of fraud might be reasonably inferred." *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679–80 (9th Cir. 2018).

Apart from boilerplate allegation that "[e]ach defendant" knowingly presented false claims, Relator pleads no facts about any Defendant's scienter. It cites no communications, identifies no internal documents, and names no individuals who allegedly acted on any Defendant's behalf. Relator does not allege who at each Defendant submitted the loan applications, or when that occurred. It does not identify the specific false record or statement that was made by any Defendant. It does not allege whether any individual at these nonprofits knew about the eligibility restrictions at the time of application or whether any individual was even aware that PPP imposed categorical exclusions on certain tax-exempt organizations. *See United States v. Woodley*, No. 24-cv-01003, 2026 U.S. Dist. LEXIS 22628, at *16–17, *19 (N.D. Cal. Feb. 3, 2026) (dismissing PPP FCA case in part on scienter grounds, noting that "many of Relator's statements are rife with conclusory allegations with regards to the Defendants' knowledge and intent"); *cf. United States ex rel. Craig v. Hawthorne Mach. Co.*, No. 20-cv-1625, 2024 U.S. Dist. LEXIS 173872, at *24–25 (S.D. Cal. Sept. 25, 2024) (scienter sufficiently pled

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 14**

when relator alleged that defendant "reviewed the relevant statutory language in preparing its PPP application" and "altered … payroll records" in support); *United States v. Univ. of Phx.*, 461 F.3d 1166, 1175 (9th Cir. 2006) (scienter sufficiently pled when complaint "allege[d] that University staff openly bragged about perpetrating a fraud, that the University had an established infrastructure to deceive the government, and that the University repeatedly changed its policies to hide its fraud."). Relator does not allege how any false record or statement was presented or caused to be presented. In short, the Complaint fails to allege the "who, what, when, where, and how of the misconduct charged." *Ebeid*, 616 F.3d at 998.

Relator tries to bridge the scienter gap by resorting to impermissible group pleading. The Complaint names 21 nonprofit defendants across five different tax-exempt categories, with different eligibility dates, loan amounts, and approval timelines, and then cries fraud against all Defendants collectively. (Compl. ¶¶ 40–42.) Yet "lump[ing] multiple defendants together" in this way has long been held to be improper under Rule 9(b). *Swoben*, 848 F.3d at 1184. At best, Relator has alleged that Defendants were ineligible for PPP loans and applied anyway. But Relator hasn't stated facts showing that these actions were done knowingly (even recognizing that knowledge for FCA purposes includes recklessness).

B.     **The Complaint Fails to Plead Materiality With Particularity.**

A misrepresentation is material only if it "ha[s] a natural tendency to influence, or [is] capable of influencing," the government's decision to pay. 31 U.S.C. § 3729(b)(4). Materiality "cannot be found where noncompliance is minor or insubstantial." *Escobar*, 579 U.S. at 194. Tarbel does not plead facts showing that any alleged misstatement affected the SBA's decision to approve or forgive any Defendant's loans. This deficiency dooms the Second Cause of Action

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 15**

against the CdA Chamber, IFDDC, and CdAEDC.[9] The second-draw loans were approved after December 27, 2020. (*See* Compl. Table.) Because any certification of 501(c)(6) eligibility was objectively true at the time of those second-draw applications, any alleged misstatement could not have been material to the SBA's payment decision. (*See infra* Part IV.)

But the materiality flaw extends to the first-draw loans as well. Based on the Complaint, the SBA approved each loan with knowledge of the borrowers' identities and tax-exempt classifications. And the SBA subsequently forgave each loan in the ordinary course. The Complaint does not allege that the SBA took any adverse action against any Defendant, sought repayment, or otherwise signaled that the alleged eligibility issue was material to its payment or forgiveness decisions. To the contrary, if anything, the Government's own conduct set forth in the Complaint—approving the loans and forgiving the loans—suggests that the alleged noncompliance was immaterial. *See Escobar*, 579 U.S. at 195 ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.").

In the end, Relator's lack of adequate and particularized pleading is not a mere technicality that can be overlooked or, as explained in Part V, *infra*, cured by allowing repleading. The pleading requirements at issue here serve important functions. Without them, plaintiffs can engage in fishing expeditions to take discovery, hoping to find evidence where none exists and damaging innocent defendants and wasting judicial resources in the process.

Indeed, in the FCA context, this case demonstrates why dismissal of "threadbare" Complaints is especially important. Calculating relators can use the *qui tam* provisions to

---

[9] Relator doesn't bring this claim against ISBA because ISBA neither applied for nor received a second-draw loan.

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 16**

threaten treble damages and extract unwarranted settlements from defendants who lack the wherewithal to litigate—as appears might be happening to two of the defendants in this case. The Court should dismiss this case in its entirety as part of its gatekeeping function. *See United States ex rel. Keeler v. Eisai, Inc.*, No. 09-22302-CV, 2013 U.S. Dist. LEXIS 188931, at *53 n.23 (S.D. Fla. Jan. 31, 2013) (district courts have an "important gatekeeping function where FCA claims are involved"); *United States v. Heritage Operations Grp.*, 622 F. Supp. 3d 679, 692 (N.D. Ill. 2022) (dismissing qui tam suit after citing Rule 9(b)'s "gatekeeping function for plaintiffs who, from a factual perspective, don't have the goods").

## III.    The Reverse-False-Claim Theory Is Duplicative and Also Fails to State a Claim.

"Reverse" FCA liability arises from fraudulently *avoiding* paying money to the government, rather than from fraudulently *obtaining* money from the government. 31 U.S.C. § 3729(a)(1)(G). Relator includes this theory in its Complaint, alleging that Defendants "knowingly conceal[ed]" or "improperly avoid[ed] or decrease[d ] an obligation to pay or transmit money or property to the United States government" in connection with their PPP loans. (Compl. ¶ 42.) In this way, Relator seems to be claiming that, in addition to improperly obtaining the PPP loans, Defendants violated the FCA by not refunding the allegedly unlawful PPP loan proceeds. Because this allegation is based on the same conduct from Relator's already-pled traditional FCA claim, however, Relator fails to state a plausible reverse false claim.

Courts consistently hold that a reverse false claim must be based on an obligation to pay that is distinct from the allegedly fraudulent conduct used to secure or obtain funds from the government. *See, e.g.*, *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119–20 (2d Cir. 2021) (agreeing with courts holding that "a reverse false claim cannot turn on the same conduct underlying a traditional false claim"); *Hawaii ex rel. Torricer v. Liberty Dialysis-Haw. LLC*, 512 F. Supp. 3d 1096, 1119–20 (D. Haw. 2021) (agreeing with the "substantial authority" that "an

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 17**

actionable reverse false claim cannot be based on a defendant's failure to refund the same payment that was obtained by an actionable false claim"); Were it otherwise, "there would be nothing 'reverse' about an action brought under [§ 3729(a)(1)(G)]." *Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 97 (D.D.C. 2014).

Even if Relator's reverse-false-claim theory were not redundant, it would fail because Defendants lacked a preexisting "established duty" to pay the government. 31 U.S.C. § 3729(b)(3) (defining "obligation" as an "established duty"); *id.* § 3729(a)(1)(G) (reverse false claim requires an "obligation"). The FCA "requires that a legal obligation to pay the government be 'established' at the time the false statement or record is made"; "the obligation cannot be merely a potential liability." *United States ex rel. Lesnik v. ISM Vuzem, D.O.O.*, 112 F.4th 816, 820 (9th Cir. 2024) (cleaned up). The Complaint says nothing about any established duty—nor could it. After all, because the alleged false statements were contained in Defendants' PPP loan applications, no obligation to repay could have existed at that time because a borrower cannot owe money it hasn't yet received.

## IV.    The Second Cause of Action Independently Fails.

Relator's Second Cause of Action (Compl. ¶¶ 43–48) against the CdA Chamber, IFDDC, and CdAEDC differs from the First Cause of Action because of Relator's "fruit of the poisonous tree" theory (Compl. ¶¶ 36, 45), which argues that any second-draw PPP loan is automatically unlawful if the defendant's first-draw loan was improper. This claim fails for the reasons outlined in Part II, *supra*, but even if this theory were valid,[10] it fails here for two independent reasons.

---

[10] To Defendants' knowledge, Relator's fruit-of-the-poisonous-tree doctrine—a phrase borrowed from criminal-procedure law—has never been cited by any federal court in a FCA case.

First, Relator claims only that "receipt of a first-draw loan was a prerequisite to receive a second-draw loan." (Compl. ¶ 36; *see also id.* ¶ 28.) But the CdA Chamber, IFDDC, and CdAEDC received first-draw loans. (*See* Compl. Table.) Accordingly, by Relator's own formulation of PPP eligibility, these Defendants were eligible for second-draw loans because they received first-draw loans. Relator's added gloss on the PPP—that the first-draw loans must have been obtained "lawfully," *id.* ¶ 44—is never explained or supported.

Second, even if Relator were right about second-draw eligibility, the Second Cause of Action must still be dismissed. The second-draw loans of the CdA Chamber (approved March 1, 2021), IFDDC (approved January 21, 2021), and CdAEDC (approved March 26, 2021) were all approved after December 27, 2020—the date on which 501(c)(6) organizations became eligible. (*See* Compl. Table.) At the time of the second-draw applications, any certification of eligibility was factually accurate. The second-draw loans are thus not fruit from any poisonous tree.

## V.     Dismissal Should Be With Prejudice.

Leave to amend should be denied where amendment would be futile. *Election Integrity Project Cal., Inc. v. Weber*, 113 F.4th 1072, 1099 (9th Cir. 2024). The defects identified above are fundamental and cannot be cured by amendment. First, no amount of amendment can transform Relator into an original source when it possesses no independent knowledge of Defendants' operations or loan applications. *Jones*, 2025 U.S. Dist. LEXIS 228988, at *9 (dismissing PPP qui tam case with prejudice because "Relator LLC did not state a claim, nor can it without violating the public-disclosure bar"). Second, the Rule 9(b) deficiencies cannot be remedied without access to (theoretical) inside information that Relator does not possess. *See Heritage Operations Grp.*, 622 F. Supp. 3d at 692 ("A lack of information should be a reason to dismiss a fraud claim, not a reason to let it go forward."). Again, Relator exists only to analyze public databases and file qui tam suits. It has been over a year since Relator filed the Complaint (during which the

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 19**

Government had the opportunity to investigate and declined to intervene), and the absence of any particularized factual detail in the Complaint confirms that Relator has nothing more to allege here. Allowing Relator leave to amend would only prolong abusive litigation against these Idaho nonprofits. The generally lenient outlook on the amendment of pleadings does not apply, and the Court should deny leave to amend.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

DATED:  May 29, 2026

HOLLAND & HART LLP


By: */s/ Joshua D. Hurwit*
    Joshua D. Hurwit
    Nathan Lilly (*pro hac vice*)

    *Attorneys for Defendants Coeur d'Alene Regional Chamber of Commerce; Idaho Falls Downtown Development Corporation; Jobs Plus, Inc. dba Coeur d'Alene Area Economic Development Corporation; and Idaho School Boards Association*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 29, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

    Jason Wood – jason@woodlaw.net
    Bruce Ellis Fein – bruce@newdream.net


    */s/ Joshua D. Hurwit*
    Joshua D. Hurwit
    for HOLLAND & HART LLP

38037732_v1

**DEFENDANTS' MEM. IN SUPPORT OF MOTION TO DISMISS - 20**