Bruce Ellis Fein (pro hac vice)
Virginia State Bar No. 44049
Bruce Ellis Fein, PLLC
P.O. Box 506
Great Falls, VA 22066
Telephone: 703-248-0390
bruce@newdream.net

John G. Simmons
Idaho State Bar No. 3156
John Simmons JD LLM, PC
796 Memorial Drive
Idaho Falls, ID 83402
Telephone: 208-528-9901
johnsimmonslaw@gmail.com

Attorneys for Plaintiff-Relator The Tarbell Group, LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| United States of America ex rel. The Tarbell Group, LLC,<br><br>Plaintiff<br><br>v.<br><br>Appaloosa Horse Club, et al.,<br><br>Defendants | Case no. 3:25-cv-145-DCN |

**RELATOR'S CONSOLIDATED OPPOSITION TO**
**ELEVEN DEFENDANTS' MOTIONS TO DISMISS**

[Dkts. 24, 25, 38, 40, 50, 56, 62, 63, 64, 79]

**Introduction**

Plaintiff-Relator The Tarbell Group, LLC ("Relator") filed this action on behalf of the United States to recover damages under the False Claims Act ("FCA" or "Act"), 31 U.S.C. §§ 3729-3733, for funds wrongfully obtained by defendants from the government through misrepresentation. Each moving defendant is a non-charitable tax-exempt organization that was ineligible

to receive a Paycheck Protection Program ("PPP") loan at the time it applied: a title-holding corporation exempt under 26 U.S.C. § 501(c)(2), an agricultural organization exempt under § 501(c)(5), a business league, chamber of commerce, or trade association exempt under § 501(c)(6), or a social or recreational club exempt under § 501(c)(7). The PPP excluded each of these tax-exempt categories when the moving defendants obtained their loans. Among organizations excused from paying taxes, only charities were eligible for PPP, and none of the defendants is a charity. Complaint, Doc. 1 ("Compl.") ¶¶ 30-35 & attached loan table. Each defendant nonetheless falsely certified, on its loan application and again on its forgiveness application, that it was eligible, and thereby obtained and retained federal funds to which it had no right. Compl. ¶¶ 29, 39-42, 45-48.

Eight motions to dismiss and three joinders, filed by eleven defendants in all, are before the Court: Docs. 24 and 25 (Lewiston Golf and Country Club Inc., joined by Appaloosa Horse Club), 38 (Ponderosa Aero Club Inc.), 40 (Capital City Public Market 1 Inc.), 50 (Caldwell Elks Home Association), 56 (Coeur d'Alene Regional Chamber of Commerce, sued herein as Coeur D'Alene Chamber of Commerce, Idaho Falls Downtown Development Corporation, Jobs Plus, Inc., and Idaho School Boards Association, collectively the "Joint Movants"), 62 (Mountain Home Chamber of Commerce), 63 and 64 (joinders by Capital City, Ponderosa, and Caldwell Elks in the Joint Movants' public-disclosure argument), and 79 (Greater Sandpoint Chamber of Commerce Inc., whose supporting memorandum, Doc. 80, joins every other pending motion). The motions advance a handful of overlapping grounds: the public-disclosure bar, Rule 9(b) and the pleading of scienter and materiality, the asserted redundancy of the reverse-false-claims allegations, and the sufficiency of the Second Cause of Action concerning second-draw loans. The table below locates each ground and states in brief why it fails. None supports dismissal.

**Summary of the Grounds Asserted and Why Each Fails**

| **Ground asserted** | **Raised by (memorandum, internal page)** | **Why it fails** |
|---|---|---|
| Public-disclosure bar, 31 U.S.C. § 3730(e)(4): suit rests on publicly available loan data, tax filings, and statutes | Joint Movants (Doc. 56-1, at 6-13), Mountain Home (Doc. 62-1, at 9-11), joinders by Capital City and Ponderosa (Doc. 63), Caldwell Elks (Doc. 64), and Greater Sandpoint (Doc. 80, at 3-5) | No enumerated source disclosed the misrepresented state of facts, defendants' certifications of eligibility, which resides exclusively in the non-public loan and forgiveness applications. The Ninth Circuit in *Erskine* recently reversed the line of cases on which defendants rely, and California district-court cases *Craig*, *Tennyson*, *Baxter*, and *iLink* rejected the same theory on the same loan data. |
| Rule 9(b): fraud not pleaded with particularity | Lewiston (Doc. 24-1, at 3-5), Appaloosa (Doc. 25), Ponderosa (Doc. 38-1, at 4-7), Capital City (Doc. 40-1, at 4-7), Caldwell Elks (Doc. 50-1, at 8-12), Joint Movants (Doc. 56-1, at 13-15), Mountain Home (Doc. 62-1, at 6-7), and Greater Sandpoint (Doc. 80, at 6) | The Complaint identifies every actual claim by loan number, draw, approval date, amount, and forgiveness date and amount. Rule 9(b) does not require naming the corporate signer, and scienter may be alleged generally. Another court recently upheld this Relator's materially identical complaint in the Eastern District of Tennessee. |
| Scienter and materiality not adequately pleaded | Joint Movants (Doc. 56-1, at 13-17), Capital City (Doc. 40-1, at 6), Ponderosa (Doc. 38-1, at 6), Caldwell Elks (Doc. 50-1, at 10-11), Mountain Home (by joinder), and Greater Sandpoint (Doc. 80, at 6) | Knowledge includes deliberate ignorance and reckless disregard, may be alleged generally, and does not require intent to defraud. 31 U.S.C. § 3729(b)(1). The eligibility certification was an express condition of payment, and forgiveness shows the government's ignorance, not its acquiescence. |
| Reverse-false-claims allegations redundant, and no established duty | Lewiston (Doc. 24-1, at 5-8), Ponderosa (Doc. 38-1, at 7-9), Capital City (Doc. 40-1, at 7-10), Caldwell Elks (Doc. 50-1, at 12-16), Joint Movants (Doc. 56-1, at 17-18), Mountain Home (Doc. 62-1, at 8), and Greater Sandpoint (Doc. 80, at 6) | The established duty is the loan debt, fixed by promissory note upon disbursement. The false record avoiding it is the forgiveness application, distinct conduct, at a distinct time, in a distinct document. |

| **Ground asserted** | **Raised by (memorandum, internal page)** | **Why it fails** |
| --- | --- | --- |
| Second Cause of Action fails because the second-draw eligibility certifications were true | Capital City (Doc. 40-1, at 10-11), Joint Movants (Doc. 56-1, at 18-19), Mountain Home (Doc. 62-1, at 8-9), and Greater Sandpoint (Doc. 80, at 6-7) | SBA's second-draw rule made any borrower that received a first-draw loan while ineligible also ineligible for a second-draw loan. 86 Fed. Reg. 3712, 3715 (Jan. 14, 2021). |
| Dismissal should be with prejudice | Joint Movants (Doc. 56-1, at 19-20), Mountain Home (Doc. 62-1, at 11), and Greater Sandpoint (Doc. 80, at 7) | *Erskine* holds that denying leave to amend in this context, even after one amendment, is an abuse of discretion. |

The centerpiece of the defense, the so-called public-disclosure bar, does not apply, as held by authority the movants do not confront. In short, the bar does not apply because the public documents do not disclose the defendants' misrepresentations, nor that they were made knowingly. Those allegations appear only in the Complaint, and it is up to Relator to prove them. The defendants' argument to the contrary amounts to an argument that the public record has already proved each of them guilty of fraud, a position none of them would embrace. The Joint Movants rely on the district court's decision in *United States ex rel. Relator, LLC v. Erskine*, citing it for judicial notice of the SBA loan database and as a decision that "dismissed qui tam suits brought by SBA PPP Database miners like Relator." Doc. 56-1, at 8 n.6, 13. Mountain Home and the three joining defendants adopt the argument. Doc. 62-1, at 9; Doc. 63, at 2; Doc. 64, at 2. On July 15, 2026, after the motions were filed, the Ninth Circuit reversed that decision, denying a challenge to a complaint that is identical to Relator's, as far as the public-disclosure bar is concerned. *United States ex rel. Relator, LLC v. Erskine*, 182 F.4th 785 (9th Cir. 2026). Multiple district courts in the Ninth Circuit have held the same, on the grounds that the public loan data does not disclose the fraud. *See United States ex rel. Craig v. Hawthorne Machinery Co.*, No. 20-cv-1625, 2024 U.S. Dist. LEXIS 173872, at *37-39 (S.D. Cal. Sept. 25, 2024) (claim rested upon the defendant's "PPP loan application itself, which is non-public"); *United States ex rel. Relator LLC v. Tennyson*, No.

2:23-cv-05887, 2025 U.S. Dist. LEXIS 194153, at *14 (C.D. Cal. Sept. 29, 2025) ("the loan details on PandemicOversight.gov do not reveal facts from which a fraudulent transaction can be inferred"); *United States v. Baxter*, No. 23-cv-00336, 2025 U.S. Dist. LEXIS 88452, at *12-13 (N.D. Cal. May 8, 2025) ("Despite the uncontested fact that Relator's complaint is factually wrapped up in the information publicly available on PandemicOversight.gov, I conclude that this information alone simply does not disclose any allegation or transaction of fraud. Relator's False Claims Act claim is not barred by the public disclosure bar . . ."); *United States ex rel. Relator LLC v. iLink Emps. Co.*, No. 5:22-cv-01004, 2024 U.S. Dist. LEXIS 149130, at *12 (C.D. Cal. July 11, 2024) (the pandemicoversight.gov "Website's disclosures are 'so innocuous' that there can be no disclosure of a fraudulent transaction in the first instance. And because the claim is not based upon a publicly disclosed allegation or transaction, the public disclosure bar is not triggered."). The sole court to rule upon motions to dismiss directed at Relator's complaints, which are materially identical to the Complaint at bar, denied them. *United States ex rel. The Tarbell Group LLC v. Bristol TN-VA Ass'n of Realtors*, No. 1:25-cv-111, Doc. 149 (E.D. Tenn. Sept. 14, 2026) ("*BTVAR*") (denying thirteen motions and rejecting both the public-disclosure defense and the Rule 9(b) particularity attacks pressed here) (too recent to be available on Lexis). To reiterate, the public loan data upon which defendants rely disclose only that the loans were made. They are silent about the false certification of eligibility that is the gravamen of every count.

The remaining grounds advanced by Defendants also do not support dismissal.

Rule 9(b) requires only notice of the misconduct charged, specific enough that defendants "can defend against the charge and not just deny that they have done anything wrong." *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (cleaned up). Every movant has that notice. Each has been told which of its loans is at issue, what it certified, when it

certified, and why the certification was false, and several have attached their own Forms 990 to their motions and directed the Court to their own entries in the loan database. Docs. 56-2 to 56-5, 62-2. No movant suggests, or plausibly could, that it does not understand what this case is about.

In order to give such notice, Rule 9(b) requires the "who, what, when, where, and how of the misconduct charged." *Wellpoint*, 904 F.3d at 677. The Complaint supplies those details, identifying every loan by defendant, number, draw, approval date, amount, forgiveness date, and forgiveness amount, and the counts identify the certification each defendant made and why it was false. Compl. ¶¶ 29, 39-42, 45-48 & attached loan table. The "who" are the respective defendants and their associated unknown John and Jane Doe officials who made the false certifications. *See Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 125-26 (2003). That no individual signer is named is not a defect. *Tennyson*, 2025 U.S. Dist. LEXIS 194153, at *19 (rejecting contention that a complaint failed Rule 9(b) due to failure to allege that a particular individual knew the certification to be false). The "what" is that the defendants claimed government money they were ineligible to receive. The "when" is given in the loan table with respect to each loan. The "where" is by electronic submission to the SBA via the respective defendants' banks. The "how" is by certifying that they were eligible to receive the money, falsely and, within the meaning of the Act, knowingly. 31 U.S.C. § 3729(b)(1) (defining "knowing" and "knowingly" to include actual knowledge of falsity, or deliberate ignorance, or reckless disregard for the truth, and disclaiming any requirement of specific intent to defraud).

This is not, in short, a case in which a relator describes a general scheme and asks the Court to infer that false claims followed. The false claims are detailed in the Complaint. The Ninth Circuit Court of Appeals has held that similar PPP complaints satisfied Rule 9(b) particularity. *iLink*, 2025 U.S. App. LEXIS 28688, at *2-3. *BTVAR* held Rule 9(b) satisfied as to this Relator's nearly

identical complaint.

Scienter is exempt from the strictures of Rule 9(b), and as noted above, the Act defines it to reach deliberate ignorance and reckless disregard without specific intent to defraud. 31 U.S.C. § 3729(b)(1). Materiality follows from the certification's character as an express condition of the money, and SBA's forgiveness of loans it did not know to be ineligible shows the victim's ignorance rather than its acquiescence. The reverse-false-claims allegations rest upon a debt fixed by promissory note upon disbursement and a separate false record, the forgiveness application, directed at extinguishing it. The Second Cause of Action rests upon SBA's rule that a borrower ineligible for a first-draw loan was ineligible for a second. 86 Fed. Reg. 3712, 3715 (Jan. 14, 2021).

**Legal Standards**

*The public-disclosure bar.* The bar is an affirmative defense that applies only where "substantially the same allegations or transactions as alleged in the action" were already "publicly disclosed—(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media." 31 U.S.C. § 3730(e)(4)(A). Where no enumerated source contains an outright allegation of fraud, the third element is governed by a formula: "if X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z . . . ." *United States ex rel. Found. Aiding the Elderly v. Horizon W., Inc.*, 265 F.3d 1011, 1015 (9th Cir. 2001), *amended opinion reported at* 2001 U.S. App. LEXIS 27363, at *7-8 (quoting *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)); *see United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016).

*The False Claims Act and Rule 9(b).* The Act imposes liability on one who "knowingly" presents a false claim for payment, makes a false record or statement material to a false claim, or conceals or avoids an obligation to pay the government. 31 U.S.C. § 3729(a)(1)(A), (B), (G). "Knowingly" encompasses not only actual knowledge but "deliberate ignorance" and "reckless disregard of the truth or falsity of the information," and "require[s] no proof of specific intent to defraud." *Id.*, § 3729(b)(1). Rule 9(b) requires the "who, what, when, where, and how of the misconduct charged." *Wellpoint*, 904 F.3d at 677; *Tennyson*, 2025 U.S. Dist. LEXIS 194153, at *20, citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). But it exempts scienter from its particularity requirement: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A Rule 12(b)(6) motion tests the sufficiency of the pleading, the Court accepting the well-pleaded allegations as true and drawing all reasonable inferences in Relator's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Asking for plausible grounds to infer [wrongdoing] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (cleaned up).

## Argument

### 1. The public-disclosure bar does not apply, because no enumerated source disclosed the fraud, and *Erskine* forecloses the contrary theory.

Every movant that asserts the public-disclosure defense makes the same mistake: it equates the public existence of a PPP loan with public disclosure of the fraud. They are not the same. The

sine qua non of every count is each defendant's false certification of eligibility. That certification appears in two places, and neither is public: the defendant's PPP loan application (SBA Form 2483 or 2483-SD) and its loan-forgiveness application (SBA Form 3508, 3508EZ, or 3508S). On the first, the applicant was required to certify that it was eligible to receive a loan under the rules in effect at the time the application was submitted, and separately to initial a certification that the information provided in the application was true and accurate in all material respects. On the second, it certified its compliance with the program's rules and the truth of the information it supplied. Compl. ¶¶ 29, 39-42, 45-48. Those applications are not among the categories the statute enumerates, and they were never publicly disclosed. What is public—the loan amounts, approval dates, forgiveness dates, and lender names in the SBA loan database, and the defendants' tax classifications in their tax filings—supplies at most Y, the true state of facts, from the Ninth Circuit formula. X, the misrepresented state of facts, appears in no public source, because the misrepresentation resides exclusively in the defendants' non-public application forms. A misrepresentation requires a representation, and the loan data contain no representation by any borrower about anything, false or true.

*Erskine*, in which the Ninth Circuit reversed dismissal based on the public-disclosure bar of a PPP complaint indistinguishable from this one, decided the question for this Circuit and thus for this Court. The relator there alleged that a mortgage lender falsely certified its PPP eligibility notwithstanding the exclusion of lending businesses in 13 C.F.R. § 120.110(b). The district court, in the decision the Joint Movants cite, Doc. 56-1, at 8 n.6, 13, held the claim barred because PandemicOversight.gov, the predecessor of the database invoked here, recorded the borrower's receipt and forgiveness of its loan together with the NAICS industry code said to reveal its disqualifying line of business. That court assigned to X the borrower's "receipt and forgiveness of a PPP loan,

which required [it] to certify its eligibility to receive the loan," and to Y its "status as an ineligible mortgage lender." 182 F.4th at 792. The Court of Appeals reversed. Assuming without deciding that the database is a federal report, it held that "[s]tanding alone, the NAICS code does not conclusively demonstrate [defendant]'s ineligibility," because the code "does not reveal that [defendant] was categorically ineligible to receive PPP funds," and that the district court had "impermissibly assessed" the relator's theory "at the highest level of generality." *Id.*, at 793 (quoting *Mateski*, 816 F.3d at 577). The panel then took a second step that governs here. The *Erskine* relator's theory was that no exception applied, but it did not rest that assertion upon a public source. It pleaded allegations of its own, and the district court had never asked whether the subject matter of those allegations was publicly disclosed at all. *Id.* (citing *Mateski*, 816 F.3d at 578, where the qualifying public disclosures provided no "specific examples or the level of detail offered by" the relator).

Similarly, the defendants point to their IRS Forms 990 for their tax classifications. Form 990 discloses only the true state of facts, the borrower's classification. It reveals no defendant's representation about PPP eligibility and no trace of the certifications on which every count rests.

The movants may argue in reply that *Erskine* turned upon the existence of exceptions to the lending exclusion, and that a paragraph of section 501(c) admits of none. The answer mistakes a classification for a conclusion. That an organization is exempt under section 501(c)(6) is a fact. That it was forbidden to receive a loan upon the day it applied is a legal conclusion, drawn from the CARES Act, the interim final rule, the Economic Aid Act, the American Rescue Plan Act, and the dates upon which each took effect, and no enumerated source draws it. Treating the classification as though it announced the ineligibility is the very step *Erskine* held impermissible.

Greater Sandpoint goes further still, asserting that "the NAICS codes in the SBA PPP Database . . . independently confirm the Greater Sandpoint Chamber's tax-exempt status." Doc. 80,

at 5. They do not. A NAICS code reports what an organization does, not how the Internal Revenue Service has classified it, and no code in the database names a subsection of section 501(c). Nor does the republication of the loan data by ProPublica, Doc. 56-1, at 9 n.7, alter the analysis.

Relator's argument does not depend upon the channel through which any of this reached the public. Through whatever channel, these sources disclose only Y. The answer does not stop there. Grant the movants their premise, that a paragraph of section 501(c) is exact where an industry code is a proxy. The comparison the Act requires is still between the enumerated sources and Relator's allegations, and the allegation upon which every count depends, that each defendant certified an eligibility it did not possess—and especially that it did so knowingly—appears in no source the movants tender.

The point bears with particular force upon the Second Cause of Action. The movants maintain that the second-draw certifications were true when made, because each second-draw loan was approved after December 27, 2020. Doc. 56-1, at 18-19. Upon their view, then, no public source demonstrates ineligibility as to those loans at all. Relator's second-draw theory rests instead upon SBA's rule that an entity ineligible for a first-draw loan is ineligible for a second, 86 Fed. Reg. 3712, 3715 (Jan. 14, 2021), and upon the allegation that each defendant obtained its first-draw loan unlawfully. No enumerated source says that of any defendant. The bar therefore cannot apply to the second-draw loans.

Nor does *Bates ex rel. Bates v. Mortgage Electronic Registration Systems, Inc.*, 694 F.3d 1076 (9th Cir. 2012), cited at Doc. 56-1, at 11, supply the missing step. *Bates* construed the California False Claims Act, Cal. Gov't Code § 12652(d)(3)(A), and applied the standard the California courts had fixed for that statute, whether the earlier disclosures were "sufficient to place the government on notice of the alleged fraud." 694 F.3d at 1081 (quoting *State ex rel. Grayson v.*

*Pac. Bell Tel. Co.*, 142 Cal. App. 4th 741, 748, 752, 48 Cal. Rptr. 3d 427 (2006)). The panel sat in diversity, and it accepted *Grayson* "as setting forth California law" because it was "bound to follow the appellate decision from California." *Id.*, at 1081 n.3. It neither cited section 3730(e)(4)(A) nor applied the formula by which this Circuit administers it, and the sentence the Joint Movants quote is itself a quotation from a decision construing the federal Act as it stood before the public-disclosure-bar amendments of 2010. *Id.*, at 1081 (quoting *United States ex rel. Findley v. FPC-Boron Emps. Club*, 105 F.3d 675, 688 (D.C. Cir. 1997)). In any event, the disclosures in *Bates* revealed the practice complained of, that the registration system was used to avoid recording mortgage assignments and paying the counties their fees, and the relator added a characterization of a practice already described. *Id.*, at 1081. Here no enumerated source describes a practice, and Relator adds not a characterization but allegations of a knowing misrepresentation that appears in no public source at all.

The question of whether the SBA loan data constitutes a federal report remains open. *Erskine* assumed that the database is a federal report because the parties there agreed that it was, and it decided nothing upon the point. 182 F.4th at 792. Relator recognizes that "report" carries a broad ordinary meaning, "something that gives information" or "[a]n official or formal statement of facts or proceedings." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407-08 (2011). But what *Schindler* held to be a report was the Department of Labor's written response to a request, the agency's account of what its files did and did not contain, together with the records the agency produced with it. *Id.*, at 406, 411. The records were covered because they accompanied that response, "just as if they had been reproduced as an appendix to a printed report." The Court took care to say that "[i]t is irrelevant whether a particular record is itself a report," for attached records "do not 'becom[e]' reports, but simply are part of a report." *Id.*, at 411 & n.6 (citation

omitted). Whether records unaccompanied by any statement of the agency are themselves a report the Court did not decide, *id.*, at 414. Here, the SBA has made no statement. It has posted bulk spreadsheets, "large Comma-Separated Values ('CSV') files," Doc. 56-1, at 7, into which it poured what applicants told it, without examining, verifying, or commenting upon a word of it. No movant identifies a federal report, hearing, audit, or investigation in which the government ever examined any defendant's eligibility, still less found it wanting.

The rule of *Silbersher v. Valeant Pharmaceuticals International, Inc.*, 89 F.4th 1154 (9th Cir. 2024), on which the Joint Movants rely for the proposition that disclosures may be "pieced together," Doc. 56-1, at 11, counsels against the bar in this case. The qualifying disclosures there "each contain a piece of the puzzle, but when pieced together, they fail to present the full picture of fraud," and the bar therefore did not apply. 89 F.4th at 1168. So here. Assemble everything the defendants tender—loan dates from the database, classifications from tax filings, eligibility dates from public statutes—and they still contain no misrepresented state of facts, because no enumerated source discloses that any defendant represented anything, let alone made a (a) misrepresentation (b) knowingly. The inference the defendants ask the Court to draw, that whoever received a loan must have falsely certified, is not a public disclosure of fraud. The requested inference suffers from two defects. First, it does not include the element of knowledge within the meaning of the Act. Second, it is a reconstruction, and the statute asks what the enumerated sources disclosed, not what might be reconstructed from them. Defendants' contrary position is tantamount to a confession of guilt that has been publicly proved.

Beneath the whole of the defense lies an assumption the bar cannot bear. The bar asks whether the fraud was publicly disclosed. A loan received in error is not fraud under the Act. A violation of the Act is a claim presented "knowingly," viz., with actual knowledge of its falsity, in

deliberate ignorance of the truth, or in reckless disregard of it. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). That element separates a violation of the Act from a mistake. "[I]nnocent mistakes" and "negligence" are not offenses under the Act, and "[p]roof of one's mistakes or inabilities is not evidence that one is a cheat." *Chen-Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1420-21 (9th Cir. 1992), overruled on other grounds by *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015) (en banc). No enumerated source speaks to that element here. Neither the loan database, nor a tax return, nor a published statute discloses what any movant knew when it certified its eligibility, what inquiry it made or declined to make, or what it was told and by whom. The "knowing" element of Relator's claim resides solely in the Complaint, *e.g., Compl.* ¶¶ 39-42, 45-48, and Relator must prove it upon evidence in the course of this action. *Wang* decided that question upon a summary-judgment record, which is where it belongs. A public record that reveals an objectively ineligible loan reveals, at most, an error. It does not reveal a fraud, and the bar reaches the latter alone.

The Joint Movants' formula shows the gap. The inference they say a member of the public could draw is that "certain organizations received PPP loans before they were eligible," which they then call "the precise 'fraud' that Relator alleges." Doc. 56-1, at 10 (emphasis added). The two are not the same. Receiving a loan before eligibility is the objective fact. The fraud is the knowing presentation of a certification of eligibility by an applicant to whom eligibility did not belong, and no source the movants tender discloses any defendant's state of knowledge. A disclosure is a "transaction" only if it carries the "fundamental elements of fraud," viz., "a misrepresented state of facts and a true state of facts." *Silbersher*, 89 F.4th at 1167 (citing *Mateski*, 816 F.3d at 571). The Court of Appeals has held that where the information disseminated is "so innocuous," there is "no public disclosure of a transaction or allegation of fraud in the first instance." *Mark ex rel.*

*United States v. Shamir USA, Inc.*, No. 20-56280, 2022 U.S. App. LEXIS 3090, at *4-5 (9th Cir. Feb. 3, 2022) (unpublished) (reversing the application of the bar). District courts have applied that rule to the database on which the defendants rely. *iLink*, 2024 U.S. Dist. LEXIS 149130, at *11-12; *Baxter*, 2025 U.S. Dist. LEXIS 88452, at *12-13; *Tennyson*, 2025 U.S. Dist. LEXIS 194153, at *14. So has the decision the Joint Movants invoke regarding scienter, *United States v. Woodley*, No. 24-cv-01003, 2026 U.S. Dist. LEXIS 22628, at *12-13 (N.D. Cal. Feb. 3, 2026) (the publicly disclosed information "does not contain an explicit accusation of wrongdoing" and "simply does not disclose any allegation or transaction of fraud"), cited at Doc. 56-1, at 14. The movants cannot maintain at once that the public record disclosed the fraud and that the Complaint fails to plead it. If the databases and the returns disclosed each movant's knowledge, the scienter argument the Joint Movants press at Doc. 56-1, at 13-17, disappears. They did not, and the bar therefore does not apply.

The district-court decisions marshaled at Doc. 56-1, at 8-9 and 12-13, do not survive *Erskine*. All were decided before it, on the theory it rejects: that a database entry recording a borrower's characteristics and its receipt of a loan publicly discloses the fraudulent transaction. *Erskine* reversed one of them outright. The catalogue is also incomplete. Confronting the same scenario, an FCA claim built on a non-public PPP application, the Southern District of California rejected the defense in *Craig*. The defendants there argued, as the movants do here, that "the entirety of [the relator's] fraud theory originated from publicly available governmental records." 2024 U.S. Dist. LEXIS 173872, at *32. The court disagreed, because the claim relied on the defendant's "PPP loan application itself, which is non-public," *id.*, at *37, and the public loan data, which revealed "only the amount of [the] PPP loan, the number of jobs retained, the date the loan was approved, the loan status, and the issuing lender," did not reveal the essential elements of the

misrepresentation. *Id.*, at *38-39. That is Relator's posture here, for every defendant. Nor was *Craig* alone. The Central District of California, applying the X + Y = Z formula to the same database, held that "the loan details on PandemicOversight.gov do not reveal facts from which a fraudulent transaction can be inferred," and denied a motion to dismiss resting on the ground the movants press here. *United States ex rel. Relator LLC v. Tennyson*, No. 2:23-cv-05887, 2025 U.S. Dist. LEXIS 194153, at *14-15 (C.D. Cal. Sept. 29, 2025). Two other courts in this Circuit reached the same conclusion on the same database. *United States v. Baxter*, No. 23-cv-00336, 2025 U.S. Dist. LEXIS 88452, at *11-13 (N.D. Cal. May 8, 2025) (the loan data "alone simply does not disclose any allegation or transaction of fraud," declining to follow *Kootstra*); *United States ex rel. Relator LLC v. iLink Emps. Co.*, No. 5:22-cv-01004, 2024 U.S. Dist. LEXIS 149130, at *11-12 (C.D. Cal. July 11, 2024) (the database's disclosures are "so innocuous" that "there can be no disclosure of a fraudulent transaction in the first instance").[1] The Joint Movants, whose catalogue of district-court decisions runs to two pages, Doc. 56-1, at 8-9, cite none of the four, except for *Craig* in another section of the brief regarding scienter only.

Days ago, the Eastern District of Tennessee in *BTVAR* denied thirteen motions to dismiss a complaint brought by this Relator, almost identical to the Complaint at bar save for the identities of the defendants. The *BTVAR* movants there relied, as the movants here rely, upon PandemicOversight.gov and kindred sources, and the court held the showing insufficient. Their materials did not establish the borrowers' section 501(c) classifications, and an SBA announcement that it would

[1] Neither decision aids the movants upon any other ground. *Baxter* dismissed the pleading before it, a second amended complaint, because the relator had not alleged that the defendant owned the private clubs said to render it ineligible, and it withheld further leave only upon that third failed amendment. 2025 U.S. Dist. LEXIS 88452, at *13-17, *21. *iLink* dismissed with leave to amend, and when the district court thereafter dismissed the amended complaint with prejudice, the Ninth Circuit reversed, holding that the relator had pleaded falsity with the particularity Rule 9(b) requires. *United States ex rel. Relator, LLC v. iLink Emps. Co.*, No. 24-5636, 2025 U.S. App. LEXIS 28688, at *2-4 (9th Cir. Nov. 3, 2025) (unpublished). Upon remand the district court denied a further motion to dismiss, holding the bar untriggered once more. *iLink*, 2026 U.S. Dist. LEXIS 64374, at *11-12 (C.D. Cal. Mar. 20, 2026).

publish "non-profit information" did not supply them, because "'[N]on-profit information' does not necessarily include an organization's 501(c) classification." *BTVAR*, at 9.

Relator does not overstate the *BTVAR* decision. The court added that the movants' evidence "suggests that there is a significant likelihood that the public-disclosure bar will apply at summary judgment," and it set an expedited schedule to decide the question upon a developed record. *BTVAR*, at 11. Whether the Eastern District of Tennessee will find that the disclosures trigger the bar will be resolved upon evidence and not upon the face of a complaint. Two omissions bear upon the use of that decision here. First, *BTVAR* cites neither *Erskine* nor *Craig* nor *Baxter* nor *iLink* nor *Tennyson*. *Erskine* was decided on July 15, 2026, after the briefing upon those motions had closed, and it does not bind the courts of the Sixth Circuit. It binds this Court. This Court therefore decides these motions with the benefit of controlling authority that was unavailable there, and that authority forecloses the level-of-generality premise upon which the movants' public-disclosure argument depends. 182 F.4th at 793. Second, the district decisions on which *BTVAR* all predate *Erskine*, and half, being from California district courts, appear to have been overruled by it. *BTVAR*, at 6-7.

Several movants denigrate the suit as parasitic. A parasitic suit free-rides on a fraud already exposed in an enumerated source, adding nothing, and the bar exists to discourage "litigation by plaintiffs who have no significant information of their own to contribute." *Mateski*, 816 F.3d at 570. This suit is the opposite. It rests on documents that are not public at all, the defendants' applications, and on Relator's analysis connecting each loan's date to the statutory eligibility timeline, an analysis found in no public source. The defendants' exhibits notably omit any that mentions a defendant in connection with a misrepresentation of its PPP eligibility. A suit cannot be parasitic on a disclosure that never revealed the fraud in the first place. Because no qualifying

public disclosure occurred, the Court need not reach the original-source exception, which Relator does not invoke upon this motion.

The Joint Movants deride Relator as "a professional relator with a place of business over 2,000 miles from Defendants—not a whistleblower with inside information" and that "[d]ata miners like Relator cannot satisfy the original-source exception." Doc. 56-1, at 12. The observations answer questions the statute does not ask. The Act commissions as a relator any "person," 31 U.S.C. § 3730(b)(1), without regard to geography, and it does not inoculate FCA violations from distant relators. Nor does the Act allow one who wrongfully obtained federal money to keep it because the person who discovered the wrong lives far away. Insider knowledge bears upon the original-source exception alone, and that exception is never reached where, as here, no enumerated source disclosed the fraud. Carried to its end, defendants' argument would confine the entire Act to insiders. Nothing in the Act so confines it.

Each movant received and retained funds of the United States upon a certification that Relator alleges was knowingly false when made. No movant's entitlement to keep that money grows with the distance from Relator's offices. The right to sue belongs to "[a] person," a term Congress left unqualified, and insider knowledge enters the statute at a single place, the original-source exception, which is reached only after a qualifying public disclosure. No movant cites a decision dismissing an action because the relator was a stranger to the defendant, and the most recent word of the Court of Appeals, *Erskine*, runs the other way. *Erskine* reversed the dismissal of an action brought by a limited liability company whose allegations rested upon the same public loan data and other public sources, and nothing in the opinion suggests that the relator's remoteness from the defendant, or its want of inside information, bore upon the question. Relator contributed not proximity but analysis: the comparison of each loan's date to the eligibility timeline that

Congress and SBA fixed, an analysis performed by no public source and, so far as the record shows, by none of the defendants before they certified.

### 2. The Complaint pleads with the particularity Rule 9(b) and Rule 8 require, including with respect to scienter and materiality

*BTVAR*, at 9-11, rejected this argument with respect to Relator's nearly identical complaint. Relator respectfully submits that this Court should too.

Rule 9(b) may be satisfied in this Circuit even by "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid*, 616 F.3d at 998-99. The Complaint needs no such indulgence, because it identifies every actual claim. It pleads the who (each named defendant, Compl. ¶¶ 4-24), the what (the false certification of PPP eligibility on the loan and forgiveness applications, Compl. ¶¶ 29, 39-42), the when (the approval and forgiveness dates set out defendant-by-defendant and loan-by-loan in the table attached to the Complaint, each first-draw approval preceding the date the defendant's tax class first became eligible, Compl. ¶¶ 30-37 & table), the where (of dubious applicability in this age of electronic submissions, but the applications went to SBA through participating lenders, Compl. ¶ 26), and the how (making a knowingly false certification of present eligibility at a time when the applicant's tax category was excluded from the program). Every loan is identified by loan number, draw, approval date, dollar amount, forgiveness date, and forgiveness amount. The authorities on which defendants rely, in which relators pleaded schemes divorced from any identified claim, are inapposite for that reason.

Nor does the Complaint "lump" defendants together in the manner Rule 9(b) forbids. The anti-lumping rule addresses pleadings in which different actors played different parts yet the complaint asserted that "everyone did everything." *Silingo*, 904 F.3d at 677 (discussing *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)). "On the other hand, a complaint need not distinguish

between defendants that had the exact same role in a fraud." *Id.* The Complaint here does better still: it pleads each defendant's circumstances separately: its tax classification, its application address, and its loans, row by row, and alleges the same species of misrepresentation as to each. *See United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1178-79, 1184 (9th Cir. 2016) ("There is no flaw in a pleading, however, where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct.").

Several movants fault the Complaint for not naming the officer or employee who signed each application. Rule 9(b) imposes no such requirement. The "who" is the defendant, for the Act's term "person" extends to the corporate applicants that made the certifications. *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 125-26 (2003). Confronting the identical objection, that no particular person was alleged to have known the certification false, the Central District of California held it reasonable to infer that officers knew the character of the organization they led, and denied the motion. *Tennyson*, 2025 U.S. Dist. LEXIS 194153, at *18-20. No defendant professes ignorance of who completed its application, when it was submitted, or what it said. They demand not particularity, but evidence, which Rule 9(b) does not require. It requires only notice of the circumstances of the fraud sufficient to permit a responsive pleading.

The purpose of the rule is notice. Particularity is required so that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Silingo*, 904 F.3d at 677 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *see Ebeid*, 616 F.3d at 999. Measured against that purpose, the motions answer themselves. Each movant has been told which of its loans is at issue, by number, draw,

date, and amount, what it certified on each application, when it certified it, and why the certification was false. The Joint Movants and Mountain Home Chamber attached their Forms 990 to their motions and directed the Court to their entries in the SBA loan database. Docs. 56-2 to 56-5, 62-2. A defendant that has already assembled the documents bearing on the claims against it cannot be heard to say that it does not know what those claims are. It is inconceivable that any movant does not understand what is afoot here, and no movant says so. Notice has been given. Neither Rule 9(b) nor Rule 12(b)(6) requires a plaintiff to possess or to plead the evidence it will need to prevail at trial. *Cf. Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (Easterbrook, J.) (a requirement that complaints contain "all of the evidence needed to prevail at trial" would "induce plaintiffs to violate Rule 8(e) . . . by larding their complaints with facts and legal theories," and "[i]nstead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving").

The Ninth Circuit Court of Appeals reached the same conclusion upon a similar complaint, holding that a relator "plausibly alleges with particularity that Defendants falsely certified certain statements in their PPP loan applications," and identifying in the pleading the who, the what and how, the when, and the where. *iLink*, 2025 U.S. App. LEXIS 28688, at *2-3 (unpublished). And the Eastern District of Tennessee rejected the same particularity attack upon this Relator's same pleading. The loan table supplied the time of each misrepresentation, the eligibility certification supplied its content, and the allegation that each defendant knowingly presented a false claim supplied the intent. "Although Plaintiff's complaint is relatively short, there is nothing more to the alleged 'fraudulent scheme' here." *BTVAR*, at 11. The allegations "provide Defendants with clear notice as to the nature of Plaintiff's claims, and they state a plausible claim for relief." *Id.*

Defendants' scienter attack fails for a similar reason: it demands at the pleading stage what

the Act does not demand even at trial. Rule 9(b) expressly permits knowledge to be "alleged generally," and liability attaches not only to actual knowledge but to "deliberate ignorance" and "reckless disregard," with no proof of specific intent to defraud required. 31 U.S.C. § 3729(b)(1). A complaint accordingly "needs only to allege facts supporting a plausible inference of scienter." *Winter ex rel. United States v. Gardens Regional Hospital & Medical Center, Inc.*, 953 F.3d 1108, 1122 (9th Cir. 2020) (citing *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 997 (9th Cir. 2011)). The inquiry concerns what the defendant knew or avoided knowing when it made the claim, and it reaches a defendant who "shut his eyes to the facts, or purposely abstained from inquiring into them." *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 750 (2023) (citation omitted). Reckless disregard reaches the applicant that certifies compliance without inquiry in the face of an obvious reason to inquire. See *United States v. Bourseau*, 531 F.3d 1159, 1167-68 (9th Cir. 2008). Any defendant that conducted a reasonable inquiry into the eligibility it certified would readily have discovered its exclusion, which was no secret. See 13 C.F.R. § 120.110(a) (nonprofit businesses ineligible for SBA business loans); Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020) (limiting nonprofit eligibility to "[a] tax-exempt nonprofit organization described in section 501(c)(3)" and directing applicants to § 120.110 for ineligible categories); SBA, Paycheck Protection Program Loans: Frequently Asked Questions, Question 3 (Apr. 6, 2020), *available at* https://legacy.sba.gov/sites/default/files/2023-03/Final%20PPP%20FAQs.pdf (same). An applicant that certified its present eligibility without that inquiry, and initialed a certification that the information it provided was true and accurate in all material respects, acted at least in deliberate ignorance or reckless disregard of the truth. And each defendant certified not once but twice, first on the loan application and again on the forgiveness application, giving it a second occasion to

discover, or deliberately to ignore, its ineligibility. Compl. ¶¶ 29, 39-42. *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996), and *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996), on which several movants rely, involved good-faith disputes over ambiguous requirements. Nothing was ambiguous about an eligibility rule that named section 501(c)(3) and section 501(c)(19) organizations and no others.

Two courts, one in this Circuit and one dealing with Relator's indistinguishable complaint, have rejected the objection the movants raise. In *Tennyson* the defendants argued, as the movants argue here, that the relator's scienter allegations were "generalized and conclusory" because no particular person was alleged to have known the certification false. The court disagreed, holding it reasonable to infer that officers knew the character of the organization they led, and denied the motion as to falsity and scienter alike. 2025 U.S. Dist. LEXIS 194153, at *18-20. And the Eastern District of Tennessee credited the same allegation of knowing presentment that the movants deprecate as boilerplate, holding it sufficient to plead fraudulent intent under Rule 9(b), the more demanding of the two pleading standards. *BTVAR*, at 11 & n.8.

The materiality argument, reduced to its substance, is that the United States would have given the eleven movants more than $1.3 million, to keep, had the movants, instead of certifying their eligibility, refused to sign the certification and announced that they were ineligible by reason of their tax category. Under that approach, a complaint alleging that a contractor delivered airplanes without wings would be dismissed for failing to allege facts showing that flight was material to the government's decision to pay. The certification was not a peripheral formality. It was an express condition of obtaining the money, and the government's "decision to expressly identify a provision as a condition of payment is relevant" to materiality. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016). A misrepresentation is material if it "went

to the very essence of the bargain," *id.*, at 193 n.5 (citation omitted), and nothing is closer to the essence of a loan program than whether the applicant was permitted to participate in it at all. The suggestion that SBA's approval and forgiveness of the loans proves immateriality gets the Act backward. Continued payment supports an inference of immateriality only where the government pays "despite its actual knowledge that certain requirements were violated." *Id.*, at 195. Access to public data is not actual knowledge. No defendant alleges, nor is it true, that SBA knew these borrowers were ineligible when it guaranteed and forgave their loans, and SBA had no means to audit each certification among the approximately 11.8 million PPP loans it guaranteed. 89 Fed. Reg. 68090, 68091 n.2 (Aug. 23, 2024). *See United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 906-07 (9th Cir. 2017) (materiality not defeated at the pleading stage where the government's actual knowledge is not established); *Craig*, 2024 U.S. Dist. LEXIS 173872, at *28-29 (SBA's forgiveness of a PPP loan not dispositive of materiality or scienter absent an allegation that SBA had actual knowledge of the violation). The government's forgiveness reflects the perpetrator's success, not the victim's informed acceptance.

Finally, the defendants invite the Court to infer from the government's declination to intervene that the case lacks merit. Doc. 56-1, at 3, 19-20; Doc. 40-1, at 3; Doc. 38-1, at 3; Doc. 62-1, at 3; Doc. 50-1, at 5. Relator objects strenuously to the inference, which has no footing in the statute, in the record, or in the case law. The Act contemplates precisely this posture: when the United States declines, the relator "shall have the right to conduct the action." 31 U.S.C. § 3730(b)(4)(B), (c)(3). The movants neither show nor know what investigation the United States Attorney's Office undertook, what other matters competed for its attention, or what resources it could devote to an action against twenty-one defendants who received relatively small amounts of money. "The government's failure to intervene on any or all claims does not mean that the claims

lack merit (or that the government thinks that they do)," for "[t]he decision to intervene can turn on any number of reasons," and "for resource reasons, the government cannot pursue every meritorious claim. If relators cannot pursue non-intervened actions, then there is no recourse at all. Surely the FCA does not require that result." *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1077 (N.D. Cal. 2020) (citation omitted); *cf. United States v. Hodges*, No. 2:22-cv-05200, 2026 U.S. Dist. LEXIS 33806, at *4 (C.D. Cal. Jan. 20, 2026) (rejecting the contention that a PPP relator acted vexatiously by continuing to prosecute after the government declined).

Moreover, the government holds the power to dismiss a qui tam action it regards as unworthy of prosecution, and it may exercise that power at any point in the litigation. 31 U.S.C. § 3730(c)(2)(A); *Polansky*, 599 U.S. at 424, 438. In its notice of election here, the government expressly reserved "its right . . . to intervene in this action, and/or to seek dismissal of the relator's action or claim at a later date," and asked to be served with every document filed in the action. Doc. 7, at 2 (quoting 31 U.S.C. § 3730(b)(1)). It has sought no dismissal. It has done the opposite. Since these motions were filed, three defendants have settled, and the notice dismissing each of them recites that it is filed "with the United States' consent to the dismissal" under 31 U.S.C. § 3730(b)(1) and bears the signature of the Assistant United States Attorney who filed the notice of election. Docs. 75, 76, 77.

The United States has so far given the same written consent to more than twenty-five settlements of materially identical claims that Relator has brought, here and in other districts, which together total approximately $7.5 million, and it intervened to negotiate and sign twenty of them. It has intervened in and pursued dozens of materially identical cases brought by Relator and by

others.[2] A government that thought these claims lacked merit had the means to say so, and instead it has repeatedly consented, on the record, to their resolution by payment. No movant cites authority holding that declination supports any inference about the merits, because none exists.

The Joint Movants pair the declination point with the suggestion that Relator uses the Act to "extract unwarranted settlements from defendants who lack the wherewithal to litigate," as "appears might be happening to two of the defendants in this case." Doc. 56-1, at 17. That suggestion, like the speculation about why the government declined, has no support in the record. The settlements in this case were reviewed and consented to by the United States, as the statute requires. If the movants may speculate about the government's reasons for declining, Relator could speculate that the government's consents indicate its endorsement of the merits of the case. Relator declines to do so, for the point is legally irrelevant.

**3. The Second Cause of Action rests upon SBA's second-draw rule, not upon a borrowed metaphor.**

The motions directed at the Second Cause of Action contend that the second-draw

[2] *See, e.g.*, *United States ex rel. Mackinac Ctr. for Pub. Policy v. Mich. Educ. Ass'n*, No. 1:22-cv-28 (W.D. Mich.) ($225,887 settlement announced Mar. 13, 2023); *United States ex rel. Riner v. Rancho Santa Fe Ass'n*, No. 3:22-cv-1285 (S.D. Cal.) ($5,809,021.60, June 12, 2024); *United States ex rel. GNGH2 Inc. v. Tellico Vill. Prop. Owners Ass'n*, No. 3:23-cv-199 (E.D. Tenn.) ($1,361,992.22, July 3, 2024); *United States ex rel. Riner v. Bay Harbor Yacht Club*, No. 1:24-cv-284 (W.D. Mich.) ($440,312.50, Aug. 28, 2024); *United States ex rel. Riner v. Recreation Ctrs. of Sun City W.*, No. 2:22-cv-1421 (D. Ariz.) ($631,400, Nov. 13, 2024); *United States ex rel. Riner v. Lake Ridge Parks & Recreation Ass'n*, No. 1:24-cv-971 (E.D. Va.) ($695,000, Apr. 7, 2025); *United States ex rel. Tarbell Grp., LLC v. Mid-Eastern Athletic Conf.*, No. 1:24-cv-849 (E.D. Va.), Docs. 11, 20 (intervention for settlement as to five defendants); *United States ex rel. Tarbell Grp., LLC v. Acoaxet Club, Inc.*, No. 1:24-cv-11950 (D. Mass.), Doc. 19 ($2,033,205, Sept. 17, 2025); *United States ex rel. Tarbell Grp., LLC v. Nat'l Women's Political Caucus, Inc.*, No. 1:24-cv-1816 (D.D.C.) (six settlements exceeding $3 million announced Sept. 24, 2025); *United States ex rel. Tarbell Grp., LLC v. Glen Allen Cmty. Ctr.*, No. 3:25-cv-652 (E.D. Va.), Doc. 7. Each settlement was announced by the Department of Justice or the United States Attorney for the district. The government has also pursued such claims without a relator. *See, e.g.,* Press Release, U.S. Att'y's Office, E.D. Wis., University Club of Milwaukee Agrees to Pay Over $1 Million to Resolve Claim that It Wrongfully Obtained Paycheck Protection Program Loan (Dec. 13, 2024).

certifications were true when made because each second-draw loan was approved after December 27, 2020, the date on which 501(c)(6) organizations became eligible. Doc. 56-1, at 18-19; Doc. 40-1, at 10-11; Doc. 62-1, at 8-9. The argument overlooks the rules those certifications invoked. On Form 2483-SD, each second-draw applicant certified that it was "eligible to receive a loan under the rules in effect at the time this application is submitted . . . implementing Second Draw Paycheck Protection Program Loans." The rules in effect, SBA's interim final rule governing second-draw loans, published January 14, 2021, before every second-draw approval at issue, provided: "An entity that is ineligible to receive a First Draw PPP Loan under the CARES Act or Consolidated First Draw PPP IFR is also ineligible for a Second Draw PPP Loan." Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, para. C, Excluded Entities, 86 Fed. Reg. 3712, 3715 (Jan. 14, 2021). The rule's text left no room for doubt about its office: subsection (e)(1) of the regulation "ensures that a borrower that received a First Draw PPP Loan despite being ineligible to receive the loan is not eligible to receive a Second Draw PPP Loan." *Id.* The Economic Aid Act likewise provided that a second-draw loan "may only be made to an eligible entity that . . . has received a [first-draw] loan" and "has used, or will use, the full amount of" it. 15 U.S.C. § 636(a)(37)(O).

Each of these defendants received its first-draw loan months before its tax class became eligible. Under the rule just quoted, each was therefore ineligible for a second-draw loan, and its certification of second-draw eligibility was false when made. That is precisely what the Complaint alleges: the listed defendants "received second-draw PPP Loans for which they were ineligible due to their failure lawfully to obtain first-draw PPP Loans." Compl. ¶ 44. The phrase "fruit of the poisonous tree," Compl. ¶¶ 36, 45, is a descriptive label for SBA's rule, not an attempt to import criminal procedure into the FCA, and the absence of the phrase from prior FCA decisions is of no

relevance, for the theory is ordinary false certification measured against the regulation then in force. The doctrine that a fraudulently procured benefit renders ensuing claims actionable is, in any event, well established in this Circuit. *See United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1173-74 (9th Cir. 2006) (promissory-fraud theory under which subsequent claims are rendered false by the original fraud).

**4. The reverse-false-claims allegations rest on a distinct false record avoiding an established debt, and are in any event proper alternative pleading.**

The movants read paragraphs 42 and 48 of the Complaint as mere relabelings of the presentment and false-record theories and ask that they be dismissed as redundant. The premise is mistaken. A PPP loan was a loan. Upon disbursement each borrower owed a repayment obligation fixed by promissory note, principal, interest, and maturity, behind which stood the SBA's guarantee. That obligation was not the "contingent" or "merely a potential liability" that *United States ex rel. Lesnik v. ISM Vuzem, D.O.O.*, 112 F.4th 816, 818-20 (9th Cir. 2024), excludes. It was a matured contractual debt, an "established duty . . . arising from an express or implied contractual . . . relationship" within 31 U.S.C. § 3729(b)(3), and unless and until forgiven, it existed whether or not the loan had been honestly obtained. The false record on which the reverse-claims allegations rest is the forgiveness application: a second certification, made at a distinct time, in a distinct document, whose office was to extinguish that established debt at the government's expense. Compl. ¶¶ 29, 42, 48. That is the paradigm of section 3729(a)(1)(G), which "expands the meaning of a false claim to include statements to avoid paying a debt." *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011).

The redundancy authorities the movants marshal are not to the contrary. *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119-20 (2d Cir. 2021), *Hawaii ex rel. Torricer v. Liberty Dialysis-Hawaii LLC*, 512 F. Supp. 3d 1096, 1119-20 (D. Haw. 2021), and their progeny hold that

a defendant's bare failure to refund money obtained by an actionable false claim cannot, without more, support a reverse claim. Here there is more: an antecedent debt created by contract, independent of any fraud, and a separate false statement, the forgiveness certification, directed at and a prerequisite to avoiding it. *United States ex rel. Houpt v. Wells Fargo Bank, N.A.*, No. 4:17-cv-00377-CWD, 2019 U.S. Dist. LEXIS 25251, at *27-29 (D. Idaho Feb. 13, 2019), is even further afield. Decided on summary judgment, it rejected a reverse-claim theory that the complaint had never pleaded, resting on unpaid regulatory penalties that applied only to a category of lender the defendant was not. And *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 335-36 (9th Cir. 2017), rejected a reverse claim at summary judgment only because the predicate presentment claim had already failed as a matter of law. If the Court were nonetheless to view the theories as overlapping, the Federal Rules expressly permit a party to plead alternative and even inconsistent theories arising from the same conduct. Fed. R. Civ. P. 8(d)(2), (3). Overlap among theories is a matter for the remedial stage, not a ground for dismissal at the threshold.

**5. If any claim were found deficient, dismissal with prejudice would contravene *Erskine*, and Relator stands ready to amend.**

The Joint Movants and Mountain Home ask that dismissal be with prejudice because amendment would be futile. *Erskine* forecloses the request. The Ninth Circuit there held that denying leave to amend was an abuse of discretion even though the relator had already amended once, observing that leave should be granted freely unless it is clear that the complaint could not be saved by amendment. 182 F.4th at 796. Relator has filed no amendment. Leave to amend is to be given "freely . . . when justice so requires," Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962), and futility means that the proposed amendment could not withstand a motion to dismiss, a showing no movant attempts beyond repeating its merits arguments. Even the decisions the defendants cite dismissed with leave to amend. *E.g.*, *United States ex rel. Relator, LLC v. Kootstra*,

No. 1:22-cv-00924, 2024 U.S. Dist. LEXIS 139497, at *14-15 (E.D. Cal. Aug. 5, 2024).

**Conclusion**

For the foregoing reasons, Relator respectfully requests that the Court deny each of the motions to dismiss in its entirety, or, should it find any claim deficient, that dismissal be without prejudice and with leave to amend.

Respectfully submitted,

/s/
John G. Simmons, Esq.
ISB No. 3156
John Simmons JD LLM, PC
796 Memorial Drive
Idaho Falls, ID 83402
johnsimmonslaw@gmail.com
208-528-9901

Attorney for Relator

/s/
Bruce Ellis Fein, Esq.
Bruce Ellis Fein, PLLC
Admitted pro hac vice
P.O. Box 506
Great Falls, VA 22066
bruce@newdream.net
703-248-0390

Attorney for Relator