Joshua D. Hurwit (ISB #9527)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone: 208.342.5000
jdhurwit@hollandhart.com

Nathan Lilly (*pro hac vice*)
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Telephone: (303) 295-8000
nalilly@hollandhart.com

*Attorneys for Defendants Coeur d'Alene Regional Chamber of Commerce; Greater Sandpoint Chamber of Commerce Inc.; Idaho Falls Downtown Development Corporation; Idaho School Boards Association; and Jobs Plus, Inc. dba Coeur d'Alene Area Economic Development Corporation.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. THE TARBELL GROUP, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>APPALOOSA HORSE CLUB, BLACKFOOT CHAMBER OF COMMERCE INC., BONNER COUNTY ASSOCIATION OF REALTORS INC., CALDWELL ELKS HOME ASSOCIATION, CAPITAL CITY PUBLIC MARKET 1 INC., COEUR D'ALENE CHAMBER OF COMMERCE, GRANGEVILLE CHAMBER OF COMMERCE, GRANGEVILLE COUNTRY CLUB INC., GREATER HAYDEN / HAYDEN LAKE CHAMBER OF COMMERCE, GREATER SANDPOINT CHAMBER OF COMMERCE INC., IDAHO BREWERS UNITED, IDAHO FALLS DOWNTOWN DEVELOPMENT CORPORATION, IDAHO HOSPITAL ASSOCIATION, IDAHO SCHOOL BOARDS ASSOCIATION, JOBS | Case No. 3:25-cv-00145-DCN<br><br>**DEFENDANTS' COLLECTIVE REPLY IN SUPPORT OF MOTIONS TO DISMISS [ECF Nos. 24, 25, 38, 40, 50, 56, 62, 63, 64, 79, 80]** |

PLUS INC., LEWISTON GOLF AND COUNTRY CLUB INC., MOUNTAIN HOME CHAMBER OF COMMERCE, PONDEROSA AERO CLUB INC., RATHDRUM AREA CHAMBER OF COMMERCE INC., SHRINERS INTERNATIONAL, SILVER VALLEY ECONOMIC DEVELOPMENT CORPORATION, and UNKNOWN JOHN OR JANE DOES,

Defendants.

Defendants Appaloosa Horse Club, Caldwell Elks Home Association, Capital City Public Market 1, Coeur d'Alene Regional Chamber of Commerce, Greater Sandpoint Chamber of Commerce, Idaho Falls Downtown Development Corp., Idaho School Boards Association, Jobs Plus Inc., Lewiston Golf & Country Club, Mountain Home Chamber of Commerce, and Ponderosa Aero Club (collectively, "Defendants") submit this reply ("Reply") in support of their motions to dismiss the Complaint filed by Relator The Tarbell Group, LLC ("Relator").[1]

---

[1] This Reply is in support of the following filings:

- Mot. to Dismiss by Lewiston Golf & Country Club, Inc. (ECF No. 24) (Apr. 30, 2026);
- Joinder to Mot. to Dismiss by Appaloosa Horse Club (ECF No. 25) (Apr. 30, 2026);
- Mot. to Dismiss by Ponderosa Aero Club, Inc. (ECF No. 38) (May 18, 2026);
- Mot. to Dismiss by Capital City Public Market 1 Inc. (ECF No. 40) (May 18, 2026);
- Mot. to Dismiss by Caldwell Elks Home Association (ECF No. 50) (May 27, 2026);
- Mot. to Dismiss by Coeur d'Alene Regional Chamber of Commerce, Idaho Falls Downtown Development Corporation, Jobs Plus Inc. d/b/a Coeur d'Alene Area Economic Development Corporation, and Idaho School Boards Association (ECF No. 56) (May 29, 2026);
- Mot. to Dismiss by Mountain Home Chamber of Commerce (ECF No. 62) (June 3, 2026);
- Joinder to Mot. to Dismiss by Capital City Public Market 1 Inc. and Ponderosa Aero Club Inc. (ECF No. 63) (June 4, 2026);
- Joinder to Mot. to Dismiss by Caldwell Elks Home Association (ECF No. 64) (June 16, 2026);
- Mot. to Dismiss by Greater Sandpoint Chamber of Commerce Inc. (ECF No. 79) (Sept. 15, 2026);
- Joinder to Mot. to Dismiss by Greater Sandpoint Chamber of Commerce Inc. (ECF No. 80) (Sept. 15, 2026).

## INTRODUCTION

Relator's opposition is unable to defeat the basic premises of Defendants' motions to dismiss: (1) this is not a proper False Claims Act case because the Tarbell Group is an opportunistic data-miner barred from serving as a relator by the FCA's public disclosure rule, and (2) Relator fails to adequately allege fraud because it has no specific information about the Defendants' conduct in obtaining PPP loans during the COVID-19 pandemic.

First, the public-disclosure bar applies. Relator cannot show—and does not even try to show—that it did anything more than assemble the Complaint from a public spreadsheet and public tax forms. The SBA's PPP database details when each Defendant received a loan. Each Defendant's Section 501(c) classification is public information available on its IRS Form 990. Federal legislation and regulations fixed the date on which each 501(c) organization became eligible for PPP funds. All of this information was public years before Relator filed suit in March 2025, and together those sources reveal everything Relator alleges. Relator has nothing more to add to the public record.

Relator's response is that no public record reproduces the eligibility certification itself, but this is a form-over-function technicality that would reduce the public-disclosure bar to a dead letter. The Complaint alleges that every PPP applicant had to certify eligibility to obtain a loan. (Compl. ¶ 29.) Thus, as the Complaint itself makes clear, every borrower who received a loan necessarily certified its eligibility. Relator's fallback is that no public source discloses a borrower's state of mind. But this position has been implicitly rejected by the Ninth Circuit, confuses the basic mechanics of the public-disclosure bar, and would mean that no FCA claim is ever barred. Relator also declines to invoke the original-source exception. (Opp'n at 18.) In a case like this, 31 U.S.C. § 3730(e)(4)(A) says a court "shall dismiss," and the Court should do so with prejudice.

Second, the Complaint fails because Relator cannot adequately plead fraud under Rule 12(b)(6) under the *Twombly*/*Iqbal* standard,[2] let alone satisfy Rule 9(b)'s particularity requirement. With respect to the First Cause of Action, Relator names twenty-one unrelated nonprofits across five tax classifications with different eligibility dates and different loan histories, then accuses all of them of fraud in identical boilerplate and conclusory paragraphs. It offers no fact distinguishing one Defendant from another, no fact bearing on any Defendant's knowledge, and no fact connecting any certification to SBA's decision to pay. The Federal Rules do not permit this kind of shotgun pleading.

The Second Cause of Action fares no better. All six Defendants Relator names became eligible for PPP loans on December 27, 2020, and each second-draw loan Relator challenges was approved after that date, so nothing those Defendants certified was false.

As for the reverse-false-claim theory (which is incorporated into both causes of action), Relator abandons what it pleaded and substitutes a promissory-note theory that appears nowhere in the Complaint. This theory fails regardless because no obligation to repay was established when any alleged false statement was made.

Defendants respectfully ask the Court to dismiss this case with prejudice because the public-disclosure bar and the pleading deficiencies in the Complaint mark the end of the road for this Relator, which has no unique knowledge to offer.

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient).

## ARGUMENT

### I. The Court Should Dismiss the Case Under Section 3730(e)(4)(A) Because Every Element of the Public-Disclosure Bar Is Satisfied.[3]

The public-disclosure bar provides that the Court "shall dismiss" a qui tam action (unless opposed by the Government) if "substantially the same allegations or transactions" were "publicly disclosed." 31 U.S.C. § 3730(e)(4)(A). The bar reflects Congress's judgment about "strik[ing] a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010); *see also United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 654 n.9 (D.C. Cir. 1994) (by enacting the public-disclosure bar, Congress chose to ignore the "potential good" of parasitic suits on government coffers to "avert the greater evil of freeloading behavior"). Under the Ninth Circuit's framework, three elements must be satisfied: "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was public; and (3) the relator's action is substantially the same as the allegation or transaction publicly disclosed." *United States v. Allergan, Inc.*, 46 F.4th 991, 996 (9th Cir. 2022) (internal quotation marks omitted). Each element is met here.

---

[3] This argument is advanced by Coeur d'Alene Regional Chamber of Commerce, Greater Sandpoint Chamber of Commerce Inc., Idaho Falls Downtown Development Corporation, Idaho School Boards Association, Jobs Plus Inc. d/b/a Coeur d'Alene Area Economic Development Corporation, Mountain Home Chamber of Commerce, Capital City Public Market 1 Inc., Ponderosa Aero Club Inc., and Caldwell Elks Home Association. Lewiston Golf and Country Club Inc. and Appaloosa Horse Club did not raise the public-disclosure bar in their own papers but join it through this reply brief.

### A. *Erskine* Is Not Dispositive.

Prior to addressing the elements of the public-disclosure bar, Relator touts *United States ex rel. Relator, LLC v. Erskine*, 182 F.4th 785 (9th Cir. 2026), as a silver bullet that precludes dismissal. Relator's argument misses the mark.

The complaint in *Erskine* was not "identical to Relator's," and the case's holding is much narrower than Relator would have the Court believe. (*See* Opp'n at 4.) *Erskine* involved mortgage lenders that were *not* categorically ineligible to receive PPP loans (exceptions existed), unlike the Defendants here. *Erskine*, 182 F.4th at 792–93. In advancing the public-disclosure bar argument, the mortgage-lending defendants in *Erskine* tried to use their publicly disclosed NAICS code (an industry classification) as a proxy for their status as mortgage lenders ineligible for PPP loans. *Id.* The problem was that not all mortgage lenders were ineligible, and the NAICS code by itself said nothing about whether any PPP exceptions might apply. *Id.* at 793. Accordingly, the Ninth Circuit held that "[s]tanding alone, the NAICS code does not conclusively demonstrate [defendant]'s ineligibility" because the code "does not reveal that [defendant] was categorically ineligible to receive PPP funds." *Id.* Nowhere does *Erskine* say or imply, however, that a defendant's "classification" can never "announce[] the [defendant's] ineligibility" for a PPP loan, as Relator claims. (Opp'n at 10.)

Suppose Relator had sued a group of political campaigns (categorically ineligible for PPP loans) instead of nonprofits. No one would dispute that those defendants' publicly available statuses as political-campaign organizations announced their ineligibility for PPP loans. Defendants' Section 501(c) classifications are no different. As Relator itself states, Section 501(c)(2), (c)(5), (c)(6), (c)(7), and (c)(10) organizations were categorically ineligible to receive PPP funds until December 27, 2020, and March 11, 2021, when the federal government expanded

eligibility. (*See* Compl. ¶¶ 30–34.) Thus, those classifications made Defendants ineligible for PPP loans when they applied—and unlike for mortgage lenders, there were no exceptions. In a recent Eastern District of Tennessee opinion involving this Relator (an opinion on which Relator heavily relies in its opposition), *see United States ex rel. Tarbell Grp. v. Bristol TN-VA Ass'n of Realtors et al.* ("*BTVAR*"), Case No. 1:25-cv-111 (E.D. Tenn., filed Apr. 2, 2025),[4] the court recognized as much: fraud can be inferred where a "Defendant held a certain 501(c) status" and "organizations with the Defendant's 501(c) status were ineligible for PPP Loans when the Defendant received the benefits." *BTVAR* Order at 8 n.6.

Relator effectively concedes the point, stating: "That an organization is exempt under section 501(c)(6) is a fact. That it was forbidden to receive a loan upon the day it applied is a legal conclusion[.]" (Opp'n at 10.) If the 501(c) classification is a fact, if the loan receipt is a fact (drawn from the SBA PPP Database), and if the eligibility timeline is a matter of the PPP's statutory text, then the so-called "legal conclusion" follows inescapably from the public record. This is what the public-disclosure bar is meant to achieve: where public information is sufficient to infer the fraudulent transaction, a relator adds nothing, and the action must be dismissed.

### B. The SBA PPP Database and IRS Forms 990 Are Public Federal Reports.

The "statutory channel" and "public" elements of the public-disclosure bar are met here because public federal reports disclosed (a) each Defendant's 501(c) classification and (b) details about each Defendant's PPP loans. Relator acknowledges "that 'report' carries a broad ordinary meaning, 'something that gives information' or '[a]n official or formal statement of facts or

---

[4] For reasons that are distinguishable and discussed below, the *BTVAR* court denied motions to dismiss in a similar 501(c) PPP FCA case brought by the same Relator. *See BTVAR*, ECF No. 149 (Sept. 14, 2026). Relator quotes *BTVAR* throughout its opposition yet neglected to give the Court a copy of the order, which is not yet available on Lexis. For the Court's convenience, a copy of the order at ECF No. 149 is attached here at **Exhibit 1**.

proceedings.'" (Opp'n at 12 (quoting *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407–08 (2011)).) But then Relator tries to graft onto the analysis an extra step: that a report must be "[]accompanied by [a] statement of the agency." (Opp'n at 13.) There is no authority for this. Relator says nothing to undermine the weight of district-court authority holding that the SBA PPP Database is a federal report because it "gives information" about PPP borrowers and their loans. (*See* Mot. (ECF No. 56-1) at 8–9.)

Defendants' nonprofit tax-exempt information returns are public federal reports, too. Federal law requires that IRS Forms 990 "shall be made available to the public." I.R.C. § 6104(b). And Forms 990 "give[] information" about nonprofits, *see Schindler Elevator*, 563 U.S. at 407, including the 501(c) classification to which they belong, *see United States ex rel. Lesko v. Minn. Orchestral Ass'n*, No. 23-3216, 2025 U.S. Dist. LEXIS 135122, at *9 (D. Minn. July 16, 2025) (finding that IRS Forms 990 were publicly available in PPP FCA case); *United States ex rel. Ward v. FEGS Home Attendant Servs.*, No. 22-CV-4725, 2026 U.S. Dist. LEXIS 191541, at *21–22 (E.D.N.Y. Aug. 25, 2026) (same). Accordingly, Forms 990 are also public federal reports.

In denying defendants' motion to dismiss in *BTVAR*, the court identified two evidentiary failures that are absent here. The first group of defendants in *BTVAR* "provided judicially noticeable evidence from publicly available sources with information relevant to their PPP Loans. These sources, however, made no reference to the Defendants' specific 501(c) classification." *BTVAR* Order at 7–8. The second group presented evidence of both loan data and classification, but "fail[ed] to show that the information regarding PPP participation and non-profit classification was publicly available *before Plaintiff filed his complaint*." *BTVAR* Order at 8.[5]

---

[5] Critically, however, the *BTVAR* court seemed to anticipate that the defendants might prevail on the public-disclosure bar on summary judgment. Thus, after denying the motions to dismiss,

Neither gap exists here. Defendants' IRS Forms 990 identify each Defendant's Section 501(c) classification and have been available online since being filed in 2018–2019, at least six years before Relator filed this case. The SBA PPP Database became publicly available in late 2020 after news organizations prevailed in *WP Co. v. U.S. Small Business Administration*, 502 F. Supp. 3d 1, 28 (D.D.C. 2020).[6] And yet the Complaint was not filed until March 14, 2025. Therefore, Defendants' nonprofit classifications and their loan data—which together comprise the sum total of facts Relator can muster—were publicly available before Relator filed the Complaint. The first two elements of the public-disclosure bar are established.

### C. Piecing Together the Public Disclosures Completes the Full Picture of Fraud.

The third and final element—*i.e.*, that Relator's action is substantially the same as public disclosures—is also satisfied. The bar applies when "different public disclosures, pieced together, present the full picture of fraud." *United States v. Sunshine*, No. 8:23-cv-00134, 2025 U.S. Dist. LEXIS 209232, at *15 (C.D. Cal. Oct. 23, 2025); *see also Silbersher v. Valeant Pharmaceuticals International, Inc.*, 89 F.4th 1154, 1167–68 (9th Cir. 2024) (public disclosures must "collectively disclose a combination of facts sufficient to permit a reasonable inference of fraud"). In reviewing a near-identical complaint, the *BTVAR* Court agreed that disclosures can "be piecemeal so long as the multiple sources of information reveal the allegation of fraud and its essential elements." *BTVAR* Order at 6 (citing Sixth Circuit caselaw).

---

the court ordered an expedited joint summary-judgment schedule to decide the merits of the public-disclosure bar on a full record. *BTVAR* Order at 11–12.

6 In addition, looking at the SBA PPP Database website, https://data.sba.gov/dataset/ppp-foia (cited in Mot. (ECF No. 56-1) at 7), this iteration of the Database was issued March 3, 2021, and last modified October 21, 2024, both before Relator filed the Complaint in 2025.

Here, the pieces are (1) the public SBA PPP Database, showing each Defendant received a PPP loan and when; (2) public Forms 990 and IRS records, showing each Defendant's Section 501(c) classification; and (3) public federal statutes and regulations, establishing the eligibility timeline. Together, these publicly available sources disclose the essential elements of the fraud Relator alleges.

Relator argues that the public loan data supply "no representation by any borrower about anything, false or true" (Opp'n at 9) and that "[t]he sine qua non of every count is each defendant's false certification of eligibility," which "appears in two places, and neither is public: the defendant's PPP loan application … and its loan-forgiveness application," (Opp'n at 8–9). In Relator's telling, because no public record reproduces the certification itself, the bar cannot apply. But, as Relator's Complaint makes clear, this formalistic argument overlooks the function of the certification and is not an escape hatch from the public-disclosure bar.

The Complaint alleges that "[a]s a condition of receiving PPP Loans and forgiveness thereof, each applicant was required to certify its eligibility under the PPP Program." (Compl. ¶ 29.) Because every PPP borrower was required to certify eligibility as a condition of receiving a loan, the fact that a borrower received a loan means that the borrower necessarily made the certification.[7] Relator cannot plead that the certification was a universal PPP condition and at the same time insist that Defendants' certifications were not clear from public records showing that they received PPP loans and had them forgiven.

Relator also contends that the public disclosures reveal only "the true state of facts" and not "the misrepresented state of facts," arguing that because no public source discloses the

---

[7] Relator is stuck with this because if a loan was issued without a certification, there would be no allegedly false statement to support the FCA violation.

borrower's subjective knowledge or intent (including alleged recklessness), the fraud inference is incomplete. (Opp'n at 9, 13–14.) The Ninth Circuit rejected a similar argument in *United States v. Alcan Electrical & Engineering, Inc.*, 197 F.3d 1014 (9th Cir. 1999). In that case, the court held that the bar applies even if a public disclosure does not "plead facts alleging FCA liability" or "mention any overcharging, false-invoicing, false certification, or any other specific fraud on the government." *Id.* at 1019. The bar compares the Complaint's "allegations or transactions" against publicly disclosed allegations or transactions, 31 U.S.C. § 3730(e)(4)(A); the bar does not require disclosure of every element of an FCA cause of action, including scienter, *see Alcan*, 197 F.3d at 1019–20. This is logical because if the bar required public disclosure of a defendant's private mental state, no FCA case would ever be barred.

Moreover, Relator misconstrues the X + Y = Z formula that Defendants raised in their motions: X is the misrepresented state of facts, Y is the true state of facts, and Z is the inference of fraud. *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016). Relator's rule would require that X and Y *and* Z be publicly disclosed for the bar to apply. (*See* Opp'n at 13–14.) But courts require only X and Y, *or* Z. *See*, *e.g.*, *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 703–04 (9th Cir. 2017). In other words, if the combination of X and Y (that a defendant presented a false set of facts to the government despite there being a true set of facts) "may" lead someone to "infer Z," then the bar applies. *Mateski*, 816 F.3d at 571. Here, that inference is met. "That the disclosed transactions themselves may not have pointed directly to any wrongdoing is simply of no moment." *A-1 Ambulance Serv. v. California*, 202 F.3d 1238, 1245 (9th Cir. 2000), *superseded by statute on other grounds as stated in Silbersher*, 89 F.4th at 1160.

None of the district-court opinions Relator cites—*Craig*, *Tennyson*, *Baxter*, and *iLink* (Opp'n at 15–16)—change the calculus because, in those cases, the plaintiffs made allegations "of

their own," *see Mateski*, 816 F.3d at 570. *Craig* declined to apply the bar because the relator pinpointed defendant's employee headcount (which was not publicly disclosed and would have made the defendant ineligible for a PPP loan as a large employer). *United States ex rel. Craig v. Hawthorne Mach. Co.*, No. 20-cv-1625, 2024 U.S. Dist. LEXIS 173872, at *39 (S.D. Cal. Sept. 25, 2024). *Baxter* came out the same way because the relator showed that the defendant's alleged status as an ineligible private club was not publicly disclosed. *United States v. Baxter*, No. 23-cv-00336, 2025 U.S. Dist. LEXIS 88452, at *12, 14 (N.D. Cal. May 8, 2025). Similarly, in *Tennyson*, as in *Erskine* after it, the court refused to apply the bar because the defendant's status as an ineligible mortgage lender was not publicly disclosed. *United States of Am. ex rel. Relator LLC v. Tennyson*, No. 2:23-cv-05887, 2025 U.S. Dist. LEXIS 194153, at *15 (C.D. Cal. Sept. 29, 2025). And *iLink* held that the bar did not apply because the public record did not reveal—as the relator was able to allege—that the defendants reported a false number of jobs, inflated the amount of their loan, and misused loan proceeds. *United States ex rel. Relator LLC v. iLink Emps. Co.*, No. 5:22-cv-01004, 2024 U.S. Dist. LEXIS 149130, at *12 (C.D. Cal. July 11, 2024). In this case, by contrast, Defendants' certification of eligibility (based on the SBA PPP Database) and Defendants' categorical ineligibility (based on IRS records) are all Relator has, and these facts were all public before Relator filed its Complaint. The X + Y = Z formulation is clear.

Relator responds by claiming that Defendants' recitation of the public-disclosure bar amounts to a concession of liability. (Opp'n at 4, 15.) Not so. Defendants can both invoke the public-disclosure bar's legal defense and later dispute liability on factual grounds if necessary. The question currently before the Court is whether the Complaint reflects that Relator has "significant information of [its] own to contribute." *Mateski*, 816 F.3d at 570. Relator does not.

Indeed, in later claiming to have adequately alleged the knowledge and materiality elements of fraud, Relator falls back on the same inferences that trigger the public-disclosure bar. Specifically, Relator argues that Defendants' certification of eligibility was "an express condition of obtaining the [PPP] money" and shows that Defendants "acted at least in deliberate ignorance or reckless disregard of the truth." (Opp'n at 22, 23.) In doing so, Relator reveals that it has no specific facts to allege beyond what is clear from the public record. The public-disclosure bar applies.

### D. Relator Waived the Original Source Exception.

"Relator does not invoke" the original-source exception (Opp'n at 18) because Relator does not meet the FCA's requirement that a relator have "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" *and* that the relator "voluntarily provided the information to the Government before filing an action," 31 U.S.C. § 3730(e)(4)(B). By failing to argue that it is an original source, Relator has waived the only exception that could save its claims. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011) (Gorsuch, J.) (legal theory deemed waived when it is "intentionally relinquished or abandoned in the district court"). Accordingly, because it is Relator's burden to show this exception, if the Court agrees that the public-disclosure bar applies, it should not reach this exception and should dismiss the Complaint with prejudice.

What's more, Relator implicitly acknowledges the "parasitic" nature of its lawsuit. *See Graham Cnty.*, 559 U.S. at 295. Relator says that it "contributed not proximity but analysis: the comparison of each loan's date to the eligibility timeline that Congress and SBA fixed." (Opp'n at 18–19.) But the public-disclosure bar prohibits bringing precisely that kind of FCA action—those based only on analyzing publicly disclosed facts. *See, e.g.*, *United States ex rel. JDJ & Assocs.*

*LLP v. Natixis*, No. 15-cv-5427, 2017 U.S. Dist. LEXIS 164106, at *17–19 (S.D.N.Y. Sept. 29, 2017) (collecting cases); *Bates ex rel. Bates v. Mortg. Elec. Registration Sys.*, 694 F.3d 1076, 1081 (9th Cir. 2012) (quoting D.C. Circuit opinion in context of discussing California FCA claim). Again, "Relator's analysis connecting each loan's date to the statutory eligibility timeline" (Opp'n at 17) is based entirely on public sources—government databases, IRS filings, and SBA loan records available to anyone with an internet connection—and adds nothing that is "independent of and materially adds to the publicly disclosed" facts, 31 U.S.C. § 3730(e)(4)(B).

In sum, the public-disclosure bar applies, and the original-source exception does not. The Court should dismiss the Complaint with prejudice.

## II. The Court Should Dismiss the Complaint for Inadequate Pleading.[8]

As an independent basis for dismissal, Relator fails to sufficiently plead FCA violations. Relator lumps the twenty-one nonprofits together but does not describe any of the defendants' conduct, their scienter (including recklessness), or the materiality of the alleged misrepresentations. Except for identifying each Defendant's public tax-exempt 501(c) status and the public loan data on an attached spreadsheet, Relator offers zero facts to distinguish among the Defendants. Indeed, after identifying the parties and the Court's jurisdiction, the Complaint goes on for only 25 more paragraphs of boilerplate legal conclusions. This is insufficient under Rule 12(b)(6), which requires more than "threadbare recitals of a[n FCA] cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555.

---

[8] This argument is advanced by all Defendants.

It is also insufficient under Rule 9(b). In the Ninth Circuit, undifferentiated allegations that "lump multiple defendants together" like this do not satisfy heightened fraud pleading standards. *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016). While a complaint "need not distinguish between defendants that had the exact same role in a fraud," *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018), this is not a case involving defendants sharing the same role in a common scheme. Indeed, the Complaint alleges no connection among the Defendants. Relator accuses twenty-one nonprofits of fraud without a single allegation that any Defendant possessed the requisite mental state or that any Defendant's representation was material to SBA's payment decision.[9] Relator also fails to allege "when" any Defendant made the alleged misrepresentations (choosing instead to cite the loan-approval date, which is distinct from the application date), despite stating in its opposition that it had done so. (Opp'n at 21.)

The Court should dismiss the Complaint because of Relator's failure to satisfy minimal pleading standards.

---

[9] Relator's opposition cites a pile of documents and regulations allegedly bearing on scienter and materiality that appear nowhere in the Complaint: SBA Forms 2483, 2483-SD, 3508, 3508EZ, and 3508S (loan applications and forgiveness applications); 86 Fed. Reg. 3712 (second-draw interim final rule); 13 C.F.R. § 120.110(a); 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020) (initial PPP eligibility rule); SBA FAQ Question 3; 89 Fed. Reg. 68090 (PPP loan statistics); and Relator's settlement history in other cases. (*See* Opp'n at 22, 23–24, 26–27.) Because Relator cannot amend its Complaint by response brief, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), the Court should not consider these sources in determining whether the Complaint states a claim. Moreover, to the extent that these documents are properly raised, they only underscore the application of the public-disclosure bar as proof that Relator's only bases for bringing this lawsuit are public records and published law.

### A. Relator Alleges No Facts About Any Defendant's Knowledge.

The FCA's scienter requirement is "critical to the operation" of the statute. *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998). To survive a motion to dismiss, Relator "must set out sufficient factual matter from which [Defendants'] knowledge of a fraud might be reasonably inferred." *Silingo*, 904 F.3d at 679–80. This standard is met when a relator "details a variety of ways in which the defendant organizations knew or showed reckless disregard or deliberate indifference of" the falsity of their claim to the government. *Id.* at 680.

Here, all Relator can muster is an unpleaded theory that "[a]ny defendant that conducted a reasonable inquiry into the eligibility it certified would readily have discovered its exclusion, which was no secret." (Opp'n at 22.) But in its Complaint, Relator has only "threadbare recitals of a[n FCA] cause of action's elements, supported by mere conclusory statements," which the Court does not accept as true on a motion to dismiss. *Iqbal*, 556 U.S. at 678. And Relator again lumps Defendants together. The Complaint does not say how one Defendant was deliberately ignorant or reckless versus another. Although scienter can be pleaded generally, Relator's repeated invocation of the statutory term "knowingly" is no substitute for actual allegations bearing on Defendants' knowledge, reckless disregard, or deliberate ignorance.

Cases where scienter was adequately pleaded make the point. In *Craig*, the relator alleged that the defendant "reviewed the relevant statutory language in preparing its PPP application" and "altered . . . payroll records." 2024 U.S. Dist. LEXIS 173872, at *24–25. In *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006), the relator alleged in its Complaint that staff "openly bragged about perpetrating a fraud" and "established infrastructure to deceive the government." *Id.* at 1175. Nothing comparable appears in this Complaint—or even in Relator's opposition brief.

Relator argues that Defendants attached their own Forms 990 and "cannot be heard to say that [they do] not know what [Relator's] claims are." (Opp'n at 20.) Not so, for at least two reasons. First, Relator never pinpoints its theory of scienter, so Defendants are left wondering whether they are being charged with actual knowledge, deliberate ignorance, or recklessness. Second, and practically, because the loans alleged in the Complaint were approved over five years ago, Defendants and their PPP banks have likely experienced employee turnover, record destruction, and faded memories, making a vague, group-pleaded Complaint especially pernicious.

In any event, Relator's argument is beside the point because Rule 9(b) is aimed at more than just giving notice of a claim. It also "protect[s] those whose reputation would be harmed as a result of being subject to fraud charges" and "prohibit[s] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Here, Relator lacks any factual basis to allege that any Defendant *knowingly* submitted false claims to the government. The Court should dismiss the case for this reason alone.

**B. Relator Does Not Plead Materiality.**

Materiality under the FCA is a "rigorous" and "demanding" standard. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 192, 194 (2016). A misrepresentation is material if it has a "natural tendency to influence" or "is capable of influencing" the government's payment decision. 31 U.S.C. § 3729(b)(4). Continued payment by the government "despite its actual knowledge that certain requirements were violated" is "very strong evidence" of immateriality. *Escobar*, 579 U.S. at 195. And to state a plausible FCA claim, a relator must "plead[] facts to support allegations of materiality." *Id.* at 195 n.6. This requires more than pleading that

the government "designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* at 194.

In this case, except for using the term "material" in its "formulaic recitation of a[n FCA] cause of action's elements," *Twombly*, 550 U.S. at 555—which the Court does not accept as true—Relator never addresses materiality or alleges facts bearing on it. There is no allegation, for example, that SBA took any adverse action, demanded repayment, or would have withheld payment had it known of Defendants' alleged ineligibility. To the contrary, the Complaint shows that every loan at issue was approved and forgiven in the ordinary course and that SBA has taken no adverse action against any Defendant to this day. Relator's parroting the FCA's language that a false claim, record, or statement was "material" is inconsistent with *Escobar*'s description of the element as "demanding" and "rigorous." Relator has not adequately alleged materiality.

* * *

Under Rule 12(b)(6) and Rule 9(b), the Complaint fails to state a claim against Defendants. The Court should dismiss.

## III. The Second Cause of Action Independently Fails for Lack of Falsity or Scienter.[10]

The Complaint alleges that certain Defendants "received second-draw PPP Loans for which they were ineligible due to their failure lawfully to obtain first-draw PPP Loans" and that because the first-draw loans were obtained "via fraud and under false pretenses, their second-draw PPP Loans constituted 'fruit of the poisonous tree.'" (Compl. ¶¶ 44–45).

10 This argument is advanced by the six Defendants named in the Second Cause of Action: Capital City Public Market 1 Inc., Coeur d'Alene Regional Chamber of Commerce, Greater Sandpoint Chamber of Commerce Inc., Idaho Falls Downtown Development Corporation, Jobs Plus Inc. d/b/a Coeur d'Alene Area Economic Development Corporation, and Mountain Home Chamber of Commerce. (Compl. ¶ 44.)

All six Defendants named in the Second Cause of Action are Section 501(c)(6) organizations that became eligible for PPP loans on December 27, 2020. The Complaint shows that every second-draw loan at issue was approved after that date. To avoid this, Relator points to an interim SBA rule—which is never mentioned in the Complaint itself—and surmises that an entity ineligible to receive a first-draw PPP loan would forever be ineligible for a second-draw loan. (*See* Opp'n at 27 (citing Business Loan Program Temporary Changes; Paycheck Protection Program Second Draw Loans, 86 Fed. Reg. 3712, 3715 (Jan. 14, 2021)).) But even if the Court considers this source, it does not get Relator to scienter. On the date each second-draw application was submitted, Section 501(c)(6) organizations were eligible for first-draw loans. So, by Relator's own admission, there was no falsity in the six Defendants' representations of eligibility. The question then becomes whether Defendants knew about (or recklessly disregarded) the SBA's interim rule, but the Complaint does not address this. Even if the interim rule were applicable and mentioned in the Complaint, the regulation alone does not establish scienter.

The Complaint does not adequately allege scienter. The Court should dismiss Relator's Second Cause of Action.

## IV. The Court Should Dismiss Relator's Reverse-False-Claim Allegations Because No Obligation to Repay Was Established When Either Alleged False Statement Was Made.[11]

The Complaint fails to state a claim under Section 3729(a)(1)(G) because it identifies no preexisting established duty to pay the government—just the alleged unlawful retention of loan proceeds. In its Opposition, Relator constructs a new reverse-false-claim theory absent from the Complaint. It argues that "[a] PPP loan was a loan" creating "a repayment obligation fixed by promissory note, principal, interest, and maturity" (Opp'n at 28), and that by obtaining forgiveness

[11] This argument is advanced by all Defendants.

through a false certification, Defendants avoided this obligation. Because Relator waited until now to identify when it believes the obligation to repay the government arose, the Court should reject this theory because a "lack of specificity . . . cannot be cured by the opposition to the motion to dismiss." *Feduccia v. I.C.E. Servs., Inc.*, No. 3:24-cv-00276, 2025 U.S. Dist. LEXIS 229377, at *16–17 (D. Alaska Nov. 21, 2025) (granting motion to dismiss PPP FCA claim); *Schneider*, 151 F.3d at 1197 n.1 ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Even if this theory were pleaded in the Complaint, Relator's new reverse-false-claim theory would fail to state a claim. Section 3729(a)(1)(G) "requires that a legal obligation to pay the government be 'established' at the time the false statement or record is made" and "the obligation cannot be merely a potential liability." *United States ex rel. Lesnik v. ISM Vuzem, D.O.O.*, 112 F.4th 816, 820 (9th Cir. 2024) (cleaned up). Relator argues that the first alleged false statement occurred on the loan application but admits that any repayment obligation arose "[u]pon disbursement." (Opp'n at 28.) This means that the obligation was not established at the time of the statement.

As for the second alleged false statement, which was made on the forgiveness application, the alleged duty to pay the government still would not have been established because it was not "immediate and self-executing." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 545 (2d Cir. 2024). To impose an obligation to repay a PPP loan, the government would have had to exercise discretion to seek to enforce the loan *after* the alleged false statement was made on the forgiveness form. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 160 F. Supp. 3d 253, 268–69 (D.D.C. 2016) (contingent obligations based only on governmental discretion to act after the false

statement was made fall outside § 3729(a)(1)(G)). So in the same way as the first statement, the obligation to repay the loan would not have been established at the time of the second statement.

This leaves Relator with a redundant reverse-false-claim theory that cannot survive dismissal. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 119–20 (2d Cir. 2021) (affirming the grant of a motion to dismiss a § 3729(a)(1)(G) claim on redundancy grounds).[12]

**V. The Court Should Dismiss the Case With Prejudice.**

The Court should dismiss the Complaint with prejudice because amendment would be futile. It's true that in *Erskine*, the Ninth Circuit held that denying leave to amend was an abuse of discretion. But that was because the Ninth Circuit believed that the relator in that case could "allege additional facts in support of its theory that [defendant] falsified its employee headcount." *Erskine*, 182 F.4th at 796.

By contrast, in this case, there is no basis to believe Relator will be able to come forward with additional allegations. Relator has no connection to or insight about Defendants. And Relator's use of the publicly disclosed facts about Defendants is insufficient to allege fraud because those facts only amount to "threadbare recitals of a[n FCA] cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Thus, "[u]nlike *Erskine*," Relator's claims "cannot be saved through amendment." *See Smith v. Trader Joe's Co.*, No. 2:26-cv-04335, 2026 U.S. Dist. LEXIS 212424, at *26 (C.D. Cal. Sept. 8, 2026).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss all claims against them with prejudice.

---

12 Relator protests that it can plead in the alternative (Opp'n at 29), but to Defendants' knowledge, no court has ever adopted Relator's reading of Rule 8(d) for reverse false claims.

DATED: October 2, 2026

HOLLAND & HART LLP

By: */s/ Joshua D. Hurwit*
Joshua D. Hurwit
Nathan Lilly (*pro hac vice*)

*Attorneys for Defendants Coeur d'Alene Regional Chamber of Commerce, Greater Sandpoint Chamber of Commerce Inc., Idaho Falls Downtown Development Corporation, Idaho School Boards Association, and Jobs Plus, Inc. dba Coeur d'Alene Area Economic Development Corporation*

BLEWITT MUSHLITZ HALLY, LLP

By: */s/ Jonathan D. Hally*
Jonathan D. Hally

*Attorneys for Defendants Appaloosa Horse Club and Lewiston Golf & Country Club, Inc.*

FOX ROTHSCHILD LLP

By: */s/ Jonathan M. Wasser*
Maureen L. Mitchell
Jonathan M. Wasser (*pro hac vice*)

*Attorneys for Defendant Caldwell Elks Home Association*

STOEL RIVES LLP

By: */s/ Wendy J. Olson*
Wendy J. Olson

*Attorneys for Defendants Capital City Public Market 1 Inc., Mountain Home Chamber of Commerce, and Ponderosa Aero Club, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 2, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John Maas, V – jmaas@ajhlaw.com
Phillip Collaer – pcollaer@ajhlaw.com
Jonathan Hally – jonhally@idahoconstructionlawyers.com
John Simmons – johnsimmonslaw@gmail.com
Bruce Ellis Fein – bruce@newdream.net
Maureen Mitchell – mmitchell@foxrothschild.com
Jonathan Wasser – jwasser@foxrothschild.com
Douglas Mushlitz – dougmushlitz@idahoconstructionlawyers.com
Wendy Olson – wendy.olson@stoel.com
Jason Wood – jason@woodlaw.net

*/s/ Joshua D. Hurwit*
Joshua D. Hurwit
for HOLLAND & HART LLP